UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

LORETTA BENSEN, SHERRY GAUL and
SHONTONNA HARRIS, individually and on
behalf of all others similarly situated,

          Plaintiffs,

v.                                                            Case No. 1:21-cv-12061

INFOPAY, INC., a Delaware Corporation,
and INTERMEDIA VENTURES LLC, a
Massachusetts limited liability company,

          Defendants.

_____

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

      Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Infopay,

Inc. ("InfoPay"), a Delaware corporation, and Intermedia Ventures LLC, a Massachusetts limited

liability company ("Intermedia"), submit this memorandum of law in support of their motion to

dismiss the Plaintiffs' Complaint (ECF No. 1) with prejudice.

                             Respectfully submitted,
                             INFOPAY, INC. and INTERMEDIA
                             VENTURES LLC

                             By their attorneys,

                             Beckage PLLC

                             *s/ Chirag H. Patel*
                             Chirag H. Patel (admitted *pro hac vice*)
                             Myriah V. Jaworski (admitted *pro hac vice*)
                             420 Main St., Suite 1110,
                             Buffalo, New York 14202
                             716-898-2102 (phone)
                             mjaworski@beckage.com
                             cpatel@beckage.com

Dated: March 1, 2022

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ......................................................................................................... 7

RELEVANT FACTUAL ALLEGATIONS ............................................................... 9

ARGUMENT ............................................................................................................... 11

   I.   Plaintiffs lack Article III standing because their claims are based on an alleged bare procedural violation of state law without any concrete injury. ................................. 12

      A.   Plaintiffs cannot allege a concrete injury. ................................................. 12

      B.   Plaintiffs cannot establish standing because their alleged injury depends entirely on speculation regarding the conduct of third parties. ................................................ 15

   II.   This Court should dismiss Plaintiffs' Complaint because it fails to state a claim under the Ohio, Illinois, or Indiana "right of publicity" laws. ........................................... 18

      A.   Standard of Review ...................................................................................... 19

      B.   This Court should dismiss Plaintiffs' Complaint because the appearance of non-identifiable partial Information in the Website's search results is not a misappropriation of any Plaintiffs' "identity." ................................................................................................ 20

      C.   This Court should dismiss Count I and III of Plaintiffs' Complaint because Plaintiffs do not have a commercially valuable "persona" or "personality." ...................................... 24

      D.   This Court should dismiss Plaintiffs' Complaint because Plaintiffs cannot show that the potential appearance of their Information in search engine results is a "commercial purpose." ................................................................................................................. 26

      E.   This Court should dismiss Plaintiffs' Complaint because Plaintiffs fail to allege their Information was ever published to third parties. ................................................. 30

   III.   Alternatively, this Court should dismiss Plaintiffs' Complaint because Defendants' public records reports are subject to the public records exemption. ......................... 31

      A.   The statutory public records exemptions. .................................................. 31

      B.   Defendants' public records reports are entitled to the public records exemption. ..... 32

CONCLUSION .......................................................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Wright*,
468 U.S. 737 (1984)..................................................................................... 16

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006) .................................................................. 25

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ..................................................................... 16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................... 18

*Berner v. Delahanty*,
129 F.3d 20 (1st Cir.1997)........................................................................... 19

*Callahan v. Ancestry.com, Inc.*,
2021 WL 4233893 (N.D. Cal. June 15, 2021)............................................ 13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................................................................... 7, 14, 15

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ........................................................ 21, 22, 23

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*,
958 F.3d 38 (1st Cir. 2020).......................................................................... 16

*Diamond v. Charles*,
476 U.S. 54 (1986)............................................................................. 14, 17

*Dobrowolski v. Intelius, Inc.*,
No. 17 CV 1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017)....................... 20, 21

*Dobrowolski v. Intelius, Inc.*,
No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) .................... passim

*ETW Corp. v. Jireh Pub., Inc.*,
332 F.3d 915 (6th Cir. 2003) ..................................................... 12, 26

*Gooley v. Mobil Oil Corp.*,
851 F.2d 513 (1st Cir.1988)......................................................................... 19

*Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*,
202 F.2d 866 (2d Cir. 1953) ........................................................................ 12

*Hart v. Elec. Arts, Inc.*,
717 F.3d 141 (3d Cir. 2013) ........................................................................ 12

*Harvey v. Sys. Effect*, LLC,
154 N.E.3d 293 (Ohio App. 2020)......................................................... passim

*Hinshaw v. Bd. of Comm'rs*,
611 N.E.2d 637 (Ind. 1993) ........................................................................ 25

*Jane Doe No. 1 v. Backpage.com, LLC*,
  817 F.3d 12 (1st Cir. 2016) .............................................................................. 25

*Jordan v. Jewel Food Stores, Inc*.,
  743 F.3d 509 (7th Cir. 2014) ............................................................................ 26

*Juarez v. Select Portfolio Servicing, Inc*.,
  708 F.3d 269 (1st Cir.2013) .............................................................................. 19

*Kam IV, Inc. v. D'Onfro*,
  16-CV-12079-ADB, 2017 WL 3083166 (D. Mass. July 19, 2017).................... 7, 25

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012) ........................................................................... 15, 16

*Landham v. Lewis Galoob Toys, Inc*.,
  227 F.3d 619 (6th Cir. 2000) ............................................................................ 23

*Lohan v. Perez*,
  924 F. Supp. 2d 447 (E.D.N.Y. 2013) ............................................................... 25

*Lowenstern v. Residential Credit Sols*.,
  2013 WL 697108 (D. Mass. Feb. 25, 2013) ........................................................ 9

*Lukis v. Whitepages Inc*.,
  454 F. Supp. 3d 746 (N.D. Ill. 2020) ................................................... 20, 21, 31

*Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prod., Inc.*,
  694 F.2d 674 (11th Cir. 1983) .......................................................................... 12

*McMorris v. Carlos Lopez & Associates, LLC*,
  995 F.3d 295 (2d Cir. 2021) ............................................................................. 15

*Morales v. Saba*,
  No. CV 15-10732-RGS, 2016 WL 593493 (D. Mass. Feb. 12, 2016) ................ 18

*Nieman v. Versuslaw, Inc.*,
  No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ......................... 26, 28, 31

*Porter Dev., LLC v. First Nat'l Bank of Valparaiso*,
  866 N.E.2d 775 (Ind. 2007) ............................................................................. 24

*Reddy v. Foster*,
  845 F.3d 493 (1st Cir. 2017)............................................................................... 6

*Remijas v. Neiman Marcus Group, LLC*
  (7th Cir. 2015)................................................................................................... 13

*Ruggers, Inc. v. United States*,
  736 F.Supp.2d 336 (D. Mass. 2010) ................................................................. 12

*Simon v. Eastern Kentucky Welfare Rights Organization*,
  426 U.S. 26 (1976)........................................................................................... 16

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................... 11, 14

*Stayart v. Google Inc.*,
  710 F.3d 719 (7th Cir. 2013) .......................................................... 25, 26, 28, 29, 31

*Thompson v. Getty Images, Inc.*,
  No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) .................................. 28

*TransUnion LLC v. Ramirez*,
  141 S.Ct. 2190 (2021) ................................................................... 6, 11, 15, 30

*Tropeano v. Atl. Monthly Co.*,
  400 N.E.2d 847 (Mass. 1980) ............................................................. 7, 12, 25

*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*,
  992 N.E.2d 859 (Ind. App. 2013) ......................................................... 23, 25, 27

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ................................................................................ 14

*Zacchini v. Scripps-Howard Broad. Co.*,
  433 U.S. 562, 570 (1977) .......................................................................... 12

## Statutes

735 ILCS 1075/5 ...................................................................................... 27
765 ILCS 1075/1 ...................................................................................... 32
765 ILCS 1075/30 ..................................................................................... 29
765 ILCS 1075/35(b)(2) ......................................................................... 30, 31
765 ILCS 1075/35(b)(4) ............................................................................. 30
765 ILCS 1075/5 ..................................................................... 19, 22, 23, 29
Ind. Code § 32-32-1-2 ................................................................................ 27
Ind. Code § 32-36-1 .................................................................................. 32
Ind. Code § 32-36-1-1(c)(3) ........................................................................ 30
Ind. Code § 32-36-1-1(c)(4); H.E.A. 1258, 117th Gen. Assemb., 2d Reg. Sess. (Ind. 2012) ...... 25
Ind. Code § 32-36-1-3 ................................................................................ 20
Ind. Code § 32-36-1-6 ..................................................................... 20, 23, 24
Ind. Code § 32-36-1-8(a) ............................................................................ 29
Ind. Code § 32-36-6 .................................................................................. 19
Ind. Code §  32-36-1-1(c)(1), (B), (D) ........................................................ 31, 32
Ohio Rev. Code § 2741.09(A)(3) ..................................................................... 31
Ohio Rev. Code § 2741.01(A) ............................................................... 19, 22, 24
Ohio Rev. Code § 2741.01(A) & (C) .................................................................. 20
Ohio Rev. Code § 2741.01(B) ........................................................................ 27
Ohio Rev. Code § 2741.02 ........................................................................ 29, 32
Ohio Rev. Code § 2741.02(A)-(B) .................................................................... 20
Ohio Rev. Code § 2741.02(D)(1) ................................................................. 30, 31
Ohio Rev. Code § 2741.09(A)(3) ..................................................................... 30

## Other Authorities

Alicia M. Hunt, *Everyone Wants to Be a Star: Extensive Publicity Rights for Noncelebrities
Unduly Restrict Commercial Speech*
  95 Nw. U.L. Rev. 1605 (2001) ...................................................................... 7

Mark Roesler, *et al. What's in a Name, Likeness, and Image? The Case for a Federal Right of Publicity Law*.

    Landslide, American Bar Association, Vo. 13, No. 1, Sept/Oct. 2020 at n. 6 ...................... 12

Restatement (Second) of Torts § 652 ........................................................................ 25

Restatement (Second) of Torts, §652C, comment d (1977) ........................................... 12

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .................................................................. 7, 17

Federal Rule of Civil Procedure 12(b)(6) ............................................................... 18, 32

**INTRODUCTION**

Defendants InfoPay and Intermedia maintain a website that provides access to reports comprised solely of "government-generated records." Compl. ¶ 23. The website allows its users to conduct a search against Defendants' records database, and then displays a search results page of reports potentially matching the name searched. Plaintiffs claim that the website violates their "right of publicity" under Ohio, Illinois, and Indiana state laws because the results page *might* show a *portion* of their name in a list of search results showing reports responsive to the specific searched-for name.

Plaintiffs do not allege that any website user has ever actually searched for any of their names, or that there is even a likelihood that users *would* search for their names. Plaintiffs also do not allege that any user purchased Defendants' product after conducting a search for any of their names. Importantly, Plaintiffs do not allege that any of them has a commercially valuable identity. In sum, Plaintiffs' theory would require this Court to accept the premise that the mere potential that their partial names might appear in a searchable database constitutes a cognizable harm and violates their "right of publicity." As explained further below, Plaintiffs' theory fails under each state's right of publicity statutes and the well-established policies underlying those laws. Thus, this Court should dismiss Plaintiffs' Complaint for two primary reasons:

As explained in ***Section I***, Plaintiffs cannot demonstrate they suffered a "concrete injury" to meet Article III standing requirements. Plaintiffs' complaint is devoid of any allegation that any Plaintiff suffered any injury, let alone an injury that is sufficiently concrete to establish Article III standing under United State Supreme Court and First Circuit precedent. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021); *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017). Plaintiffs must allege more than a mere technical statutory violation to establish standing

(which even then they fail to allege).  Any injury that might be gleaned from a generous reading of Plaintiffs' allegation that they "lost control" of the use of their information is based on speculation regarding the unalleged conduct of unidentified third parties.  This abstract injury is not "certainly impending" and therefore does not meet Article III's requirements.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Accordingly, this Court should dismiss Plaintiffs' Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

As explained in ***Section II***, Plaintiffs fail to state a claim under Federal Rule of Civil Procedure 12(b)(6) because they do not (and cannot) meet any of the essential elements of a state law right of publicity claim.  The right of publicity was never intended to apply – and courts have repeatedly rejected the law's application – to the incidental appearance of a partial name in search engine.  Rather, the right of publicity developed to protect individuals of fame or notoriety against the misappropriation of the commercial value of their identity.  At its core, a right-of-publicity claim looks to whether a publisher has attempted to "deliberately exploit" an individual's valuable identity for "advertising or trade purposes."  *Kam IV, Inc. v. D'Onfro*, 16-CV-12079-ADB, 2017 WL 3083166 (D. Mass. July 19, 2017) (Borroughs, J.) (quoting *Tropeano v. Atl. Monthly Co.*, 400 N.E.2d 847, 850 (Mass. 1980)).[1]  That has not occurred here.  Thus, this Court should dismiss Plaintiffs' Complaint with prejudice because:

1.  A right of publicity claim requires that the offending publication contain sufficient identifying information about the Plaintiffs, because there is no exploitation of the goodwill in an individual's identity if a reader cannot connect that information to a *specific* individual.  Here, the limited Information on Defendants' Website does not constitute use of an identity as a matter of law.  *See* Section II(B).

2.  Plaintiffs Bensen (Count I) and Harris (Count III) do not, and cannot, show that they have an "identity" with unique "commercial value."  *See* Section II(C).

---

[1] *See* Alicia M. Hunt, *Everyone Wants to Be a Star: Extensive Publicity Rights for Noncelebrities Unduly Restrict Commercial Speech*, 95 Nw. U.L. Rev. 1605 (2001).

3.  The *potential* appearance of *partial* names matching the Plaintiffs in search results of a public records database, suggesting that reports about the Plaintiffs *might* be available, does not constitute a "commercial purpose" because it is not a deliberate attempt to exploit the commercial value of any Plaintiff's "identity."  *See* Section II(D).

4.  Plaintiffs do not plausibly allege any public use of their information or possible resulting injury.  *See* Section II(E).

5.  Defendants' reports, which are comprised solely of "government-generated records," are subject to a public interest exemption under each state law statute.  *See* Section III.

For all of these reasons, as set forth more fully below, this Court should dismiss Plaintiffs' Complaint with prejudice.

**RELEVANT FACTUAL ALLEGATIONS**

Plaintiffs' claims center around the 'StateRecords.org' website (the "Website").  Compl. ¶ 1. Defendants InfoPay Inc. and InterMedia Ventures LLC are alleged to own and operate the Website.  *Id*. ¶ 4.  The Website allows internet users to search for and purchase aggregated public records reports about individuals.  Compl. ¶¶ 2, 23.  As alleged by Plaintiffs, these reports are comprised solely of aggregated "*government-generated records*, including arrest/warrant records, criminal records, court records, marriage records, bankruptcies and liens, lawsuits, and police reports."  Compl. ¶ 23 (emphasis added) (generally referred to as "public records").  A Website user may search for reports about specific individuals by typing a name into a search field.  Compl. ¶¶ 2, 22.  The Website queries the search against its public records database and returns a results page showing all reports matching the name searched.  Compl. ¶ 2.  For example, a search of Plaintiff Bensen's name is alleged to return the following results page:

9

Compl. ¶ 23, fig. 1.

Importantly, the screen shots in Plaintiffs' Complaint contradict their allegation that the Website displays an "individual's **full** name alongside certain uniquely identifying information . . . ."[2] *Compare* Compl.  ¶ 2 (emphasis added) *with* Compl. ¶ 23, fig. 1.  Rather, the results page shows *only* partial information about the individuals matching the search:  a first name, last initial, age, and an associated city and state (generally referred to as "Information").  *See* Compl. ¶ 23, fig. 1.  The results page then allows the website user to purchase the report(s). Compl. ¶ 2.[3]

Plaintiffs Loretta Bensen of Ohio ("Bensen"); Sherry Gaul of Illinois ("Gaul"), and Shontonna Harris of Indiana ("Harris") (Bensen, Gaul, and Harris are collectively, "Plaintiffs") allege that "in 2021," they discovered that the Website's search results listed reports that

---

[2] "When [a] document[] contradict[s] an allegation in the complaint, the document trumps the allegation." *Lowenstern v. Residential Credit Sols*., 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013). The contents of the website as shown in Plaintiffs' screenshots trump Plaintiffs' incorrect allegations.

[3] As discussed in Section II(D), *infra* at p. 21, the commercial model under which Defendants offer their products (sale of individual reports versus a subscription model) is irrelevant to the analysis regarding whether Defendants misappropriated any Plaintiffs' identity.

potentially matched their names.  Compl. ¶¶ 5-7, 30.  Plaintiffs allege that their "full names, ages, and locations" appeared on the Website (again, this is contradicted by screenshots in Plaintiffs' Complaint that show that the search results displayed only a first name and last initial).  *Compare* Compl. ¶ 31 *with* ¶¶ 23 fig. 1; 25 fig. 2; 26, fig. 3.  Plaintiffs allege that none of them "provided Defendants with their written consent (or consent of any kind) to use any attribute of their identities for commercial purposes."  Compl. ¶ 32.  Plaintiffs state that they have never been customers of the Website and have no relationship with the Website.  Compl. ¶ 33.

Notably *absent* from Plaintiffs' Complaint is any allegation to show or support that:

- Any Plaintiff's "identity" has independent "commercial value";

- Any Plaintiff intended to make any commercial use of their "identity";

- Any third-party actually viewed any Plaintiff's "identity" on the Website;

- Any third-party actually purchased a report after viewing any Plaintiff's "identity" on the Website"; and/or

- Any Plaintiff suffered any concrete injury on the basis of their "identity" allegedly appearing on the Website.

## **ARGUMENT**

This Court should dismiss Plaintiffs' Complaint for lack of Article III standing because the Plaintiffs' allegations that their partial Information might appear in search results on the Website does not constitute a concrete injury.  *See* **Section I**.  Alternatively, this Court should dismiss Plaintiffs' Complaint because they cannot meet each of the essential elements of their state law right to publicity claims, and/or because the public reports on Defendants' Website are exempt from liability.  *See* **Sections II - III**.

I.      **Plaintiffs lack Article III standing because their claims are based on an alleged bare procedural violation of state law without any concrete injury.**

To establish Article III standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021).

A.      **Plaintiffs cannot allege a concrete injury.**

"Article III standing requires a concrete injury <u>even in the context of a statutory violation</u>." *TransUnion*, 141 S. Ct. at 2205 (*quoting Spokeo, Inc. v. Robins,* 578 U.S. 330, 341 (2016) (emphasis added)). "Importantly, [the Supreme Court] has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. "[The legislature's] creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.*

"A concrete injury" must be "real" and "not abstract." *Spokeo*, 578 U.S. at 340. To determine whether an injury is concrete, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S.Ct. at 2204. However, the concrete injury requirement "is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*.

The specific injury that Plaintiffs allege – misappropriation of the value of their publicity – is not a cause of action that was traditionally recognized as the basis for a lawsuit in American courts.  For example, Massachusetts did not recognize a cause of action for misappropriation of

publicity in common law.  *See Ruggers, Inc. v. United States*, 736 F.Supp.2d 336, 342 (D. Mass. 2010).  The case frequently cited as the first judicial recognition of the modern right of publicity was decided in 1953.  *See Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir. 1953) (applying New York law).[4]  The Plaintiffs' causes of action here are based on statutes that were not enacted until 1994 (Indiana) and 1999 (Illinois and Ohio).  Even today, not every state recognizes a right of publicity.[5]

Moreover, the 1953 *Haelan* decision articulated the policies favoring the recognition of a cause of action for misappropriation of publicity:

> [A] man has a right in the publicity value of his photograph, *i.e.*, the right to grant the exclusive privilege of publishing his picture. … This right might be called a 'right of publicity.' For it is common knowledge that many prominent persons (especially actors and ball-players), far from having their feelings bruised through public exposure of their likenesses, would feel sorely deprived if they no longer received money for authorizing advertisements, popularizing their countenances, displayed in newspapers, magazines, busses, trains and subways. This right of publicity would usually yield them no money unless it could be made the subject of an exclusive grant which barred any other advertiser from using their pictures.

*Haelan*, 202 F.2d at 868.  *See also Tropeano v. Atl. Monthly Co.*, 379 Mass. 745, 749 (1980); *citing* Restatement (Second) of Torts, §652C, comment d (1977) (the motivation for the cause of action for misappropriation of publicity is "the value of one's […] reputation, prestige, or other value associated with him, for purposes of publicity.")

---

[4] *See Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prod., Inc.*, 694 F.2d 674, 678 (11th Cir. 1983) ("The 'right of publicity' was first recognized in *Haelan Laboratories*"); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 929 (6th Cir. 2003) ("A cause of action for violation of the right [of publicity] was first recognized in *Haelan Laboratories*"); *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 150 (3d Cir. 2013) (same); *See Also Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 570 n. 4 (1977) (noting *Haelan Laboratories* as the source of the term "right of publicity").
[5] *See* Mark Roesler, *et al. What's in a Name, Likeness, and Image? The Case for a Federal Right of Publicity Law*. LANDSLIDE, American Bar Association, Vo. 13, No. 1, Sept/Oct. 2020 at n. 6 (noting that, as of 2020, only 35 states recognized a right of publicity, either by statute or by common law) (accessible at https://www.americanbar.org/groups/intellectual_property_law/publications/landslide/2020-21/september-october/what-s-in-a-name-likeness-image-case-for-federal-right-of-publicity-law/).

Accordingly, and as described further in <u>Section II(C)</u> below, the motivation for the modern right of publicity is to protect against the misappropriation of the commercial value of a recognizable person's identity for the purposes of an unauthorized endorsement.  Beyond this specific concern for recognizable persons, the Seventh Circuit recently rejected the more general argument that *anyone's* personal information has value that is akin to intangible property rights. *Remijas v. Neiman Marcus Group, LLC* (7th Cir. 2015).  Thus, the Seventh Circuit held that the plaintiff could not establish standing based on "such an abstract injury, particularly since the complaint does not suggest that the plaintiffs could sell their personal information for value."  *Id*.

Consistent with the relatively recent judicial recognition of right of publicity, the district court in *Callahan v. Ancestry.com, Inc.*, dismissed a statutory right of publicity claim for lack of standing based on facts similar to those alleged by Plaintiffs.  <u>2021 WL 4233893</u> (N.D. Cal. June 15, 2021).  In *Callahan*, the plaintiff alleged only that his identity appeared in an online database of previously published yearbooks.  *Id*.  The district court found that the plaintiff failed to allege any concrete injury because the rights conferred by publicity statutes "were not analogous to the fundamental and historical privacy rights."  *Id.* at *4.

Here, as in *Callahan*, Plaintiffs have not alleged any injury that American courts have traditionally recognized as a basis for a federal lawsuit.  Plaintiffs' alleged theory of injury is, at best, that partial information matching their names *might* be visible on Defendants' website *if* a third party runs a search for the Plaintiffs' names.  The mere allegation that Plaintiffs' partial names might appear in the search results on a public records database cannot plausibly be construed by the database user as the Plaintiffs' *endorsement* of the database in any way.  Further, Plaintiffs have not alleged that they are recognizable persons, or that there is otherwise any commercial value to their identities.

Rather than allege any facts that support their injury claim, Plaintiffs' resort to abstract arguments about their loss of "control" over their identifying information.  Compl. ¶ 48, 56, 64. However, the Supreme Court has declared that this is the very kind of "abstract" injury that is insufficient to confer Article III standing.  *See Spokeo*, 578 U.S. at 340.  Moreover, Plaintiffs have not plausibly alleged *how* the mere fact that their partial names might appear in search results on a public records database constitutes any meaningful loss of control, especially when Plaintiffs fail to allege that their identities have any commercial value or that Plaintiffs ever attempted to profit from their identities.  This Court must dismiss Plaintiffs' complaint for lack of standing because Plaintiffs cannot plausibly allege any concrete injury traditionally recognized as the basis for a cause of action in American courts.

**B.     Plaintiffs cannot establish standing because their alleged injury depends entirely on speculation regarding the conduct of third parties.**

"Unadorned speculation will not suffice to invoke the federal judicial power."  *Diamond v. Charles*, 476 U.S. 54, 66 (1986).  "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  The requirement of a concrete injury "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes."  *Id.* Further, "allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).  Rather, the Supreme Court has "repeatedly reiterated that [a] threatened injury must be certainly impending to constitute injury in fact." *Clapper*, 568 U.S. at 409 (rejecting "objectively reasonable likelihood" standard for standing based on the risk of a future injury and reiterating that the risk of future injury must be "certainly impending" to confer standing).

Consistent with these principles, the Supreme Court has repeatedly found that plaintiffs fail to allege a concrete injury when the existence of their injury depends on speculation regarding the conduct of third parties. *See e.g., TransUnion*, 141 S.Ct. at 2212 (plaintiffs whose misleading credit reports had not been published to any third party lacked standing because the risk that their credit reports would be requested by third parties "was too speculative to support Article III standing"); *Clapper*, 568 U.S. at 411-412 (plaintiffs who alleged that law authorizing intelligence agency to conduct surveillance on foreign persons would impermissibly result in surveillance on U.S. persons communicating with those foreign persons lacked standing because the plaintiffs "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired" and plaintiffs "can only speculate as to how [government officials] will exercise their discretion in determining which communications to target").

Further, for causes of action where the plaintiff's theory of injury necessarily requires the involvement of a third party, federal circuit courts have consistently dismissed claims for lack of standing when the plaintiff fails to allege any facts beyond pure speculation regarding the conduct of that third party. *See e.g. Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) (dismissing privacy causes of action based on alleged inadequate cyber security measures for lack of standing when plaintiff failed to allege that any of her private information had actually been accessed by any third parties, and plaintiffs' argument that it might happen in the future was too speculative to constitute a concrete injury because it "rest[ed] entirely on the hypothesis that at some point an unauthorized, as-yet unidentified, third party might access her data"); *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 304 (2d Cir. 2021) (dismissing data breach claim for lack of standing when plaintiffs failed to allege that any third parties had actually accessed their data, and plaintiffs' argument that such access might happen in the future

16

was based on a "chain of possibilities" that was "too speculative" and "attenuated" to constitute a concrete injury); *Beck v. McDonald*, 848 F.3d 262, 268 (4th Cir. 2017) (dismissing data breach claim for lack of standing when plaintiffs failed to allege that any third parties had actually accessed their data, and plaintiffs' argument that it might happen in the future was "contingent on a chain of attenuated hypothetical events and actions by third parties independent of the defendants").

Similarly, with respect to the causation requirement for standing, "the Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties." *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 48 (1st Cir. 2020) (finding that customers of ocean freight carriers lacked standing to challenge fees imposed by a port authority on the freight carriers, because the customers' argument hinged on speculation as to whether the ocean carriers were passing the cost of the fees down to its customers); *citing Allen v. Wright*, 468 U.S. 737, 757-59 (1984) (plaintiff lacked standing where the chain of causation involved the independent actions of third parties that had an uncertain and speculative effect that were "far too weak for the chain as a whole to sustain … standing") and *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 42-45 (1976) (finding that decisions by a third party were too uncertain and broke the chain of causation between the injury and the challenged actions); s*ee also Katz*, 672 F.3d at 76 ("when the injury alleged is the result of actions by some third party, not the defendant, the plaintiff cannot satisfy the causation element of the standing inquiry").

Again, Plaintiffs' alleged theory of injury here is, at best, that their *partial* names *might* be visible on Defendants' website *if* a third party runs a search for the Plaintiffs' names, and that

third party *might* then engage in a commercial transaction with Defendants.  Accordingly,

Plaintiffs' theory of injury necessarily depends entirely on speculation regarding the conduct of

unknown third parties.  To be clear, Plaintiffs have not alleged that anyone – other than

themselves or their counsel – have actually searched for them on Defendants' website or engaged

in any commercial transaction with Defendants based on any such search.

Finally, Plaintiffs' theory that they have lost "control" over their identity is another

allegation of possible future harm which is insufficient to confer standing.  *See* Compl. ¶¶ 48,

56, 64.  Plaintiffs have not alleged facts that establish a material likelihood that anyone *will ever*

search for them, let alone facts that could establish that any such searches are certainly

impending, or that any such searches (if they occurred at all) would certainly result in a

commercial transaction or some other cognizable harm based on a loss of "control."  Again,

"unadorned speculation will not suffice to invoke the federal judicial power."  *Diamond*, 476

U.S. at 66.  Plaintiffs cannot establish either the concrete injury or causation requirements for

standing because their theory of injury hinges on impermissible speculation regarding the

conduct of unknown third parties.  This Court should dismiss Plaintiffs' Complaint under Federal

Rule 12(b)(1) for lack of Article III standing.

II.      **This Court should dismiss Plaintiffs' Complaint because it fails to state a claim
         under the Ohio, Illinois, or Indiana "right of publicity" laws.**

Plaintiffs' Complaint fails to state a claim under the Ohio, Illinois, and Indiana right of

publicity statutes for all of the following reasons:

**First,** the limited Information in the Website's search results does *not* contain any

information that is sufficiently specific to identify any of the Plaintiffs and therefore cannot

constitute the use of any Plaintiffs' "identity," as defined by each state's publicity statute.  *See*

Subsection (B).

**Second,** Plaintiffs do not, and cannot, allege that their "identities" have unique "commercial value" that they cultivated through notoriety or celebrity status, as required by the state publicity statutes. *See* <u>Subsection (C)</u>.

**Third,** the *potential* appearance of partial names matching the Plaintiffs in the search results of a public records database, suggesting that reports about the Plaintiffs *might* be available, is merely incidental and does not constitute a "commercial purpose" as defined by the state publicity statutes because it is not a deliberate attempt to exploit the commercial value of any Plaintiff's identity for an unauthorized endorsement. *See* <u>Subsection (D)</u>.

**Fourth,** Plaintiffs do not allege that any actual "use" of their "identity" for a "commercial purpose" caused them any injury. Specifically, Plaintiffs fail to allege any publication to any third party that could plausibly establish any injury in the form of misappropriation. *See* <u>Subsection (E)</u>.

## A.  Standard of Review

<u>Federal Rule of Civil Procedure 12(b)(6)</u> requires this Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." A complaint fails to state a claim if it lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, <u>550 U.S. 544, 570</u> (2007). The Complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . 'on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Morales v. Saba*, No. CV 15-10732-RGS, <u>2016 WL 593493</u>, at *7 (D. Mass. Feb. 12, 2016) (quoting *Twombly*, <u>550 U.S. at 555</u> (citations omitted)).

"[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for

relief." *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir.2013) (internal

quotations omitted).  In short, dismissal is appropriate if the complaint lacks "factual allegations,

either direct or inferential, respecting each material element" necessary to sustain recovery under

some actionable legal theory."  *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) (quoting

*Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)) (internal quotation marks omitted).

> **B.**     **This Court should dismiss Plaintiffs' Complaint because the appearance of
> non-identifiable partial Information in the Website's search results is not a
> misappropriation of any Plaintiffs' "identity."**

As a threshold matter, the Ohio, Illinois, and Indiana right of publicity laws require a

plaintiff to show that the information appearing in an allegedly infringing publication constitutes

the use of their specific and unique "identity" (Illinois), "persona" (Ohio) or "personality"

(Indiana).  Ohio Rev. Code § 2741.01(A); 765 ILCS 1075/5.; Ind. Code § 32-36-6.  Indeed, if the

published information is not identifiable to a specific person based on the unique attributes that

gives *that* individual's name value, then there can be no exploitation of the value of that

individual's name.  As explained below, the generic use of a first name and last initial in a list of

search results – the Information displayed on the Website – does not constitute an "identity"

(Illinois), "persona" (Ohio) or "personality" (Indiana) under those state statutes.

> 1.    Statutory definitions of "Identity", "Personality" and "Persona"

The ***Illinois*** statute applies to the use of an individual's "identity," which includes "any

attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer

or listener, including but not limited to [their] name . . .." 765 ILCS 1075/5 (emphasis added).

"Name" means "the actual name or other name by which an individual is known that is intended

to identify that individual."  765 ILCS 1075/5 (emphasis added).

The **Ohio** statute applies to use of an individual's "persona" which includes their "name" if that name has "commercial value."  Ohio Rev. Code § 2741.02(A)-(B).  "Name" means "the actual, assumed, or <u>clearly identifiable</u> name of or reference to a living or deceased individual <u>that identifies the individual</u>."  Ohio Rev. Code § 2741.01(A) & <u>(C)</u> (emphasis added).

The **Indiana** statute applies to use of an individual's "personality" which include their "name" if it "has commercial value . . .."  <u>Ind. Code § 32-36-1-6</u> (emphasis added).  "Name" means "the actual or assumed name . . . that is intended to identify the person."  <u>Ind. Code § 32-36-1-3</u>.

Illinois is a reasonable starting place for discussion because it has relevant case law and a broader definition of "identity" than its Ohio and Indiana counterparts.  Because the display of partial Information in search results on the Website does not constitute the use of a "identity" under the Illinois statute, it follows that the same is true under the Ohio's and Indiana's narrower definition of the operative statutory terms.

    2.   <u>This Court should dismiss Gaul's Illinois publicity claim because the website does not use her "identity" (Count II).</u>

Federal courts interpreting the Illinois statute have consistently held that partial identifying information on a website is insufficient to constitute use of a specific individual's "name."  The District Court for Northern District of Illinois addressed this specific issue in the context of website search results in *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, <u>2018 WL 11185289</u> (N.D. Ill. May 21, 2018) (Shah, J.) ("*Dobrowolski II*)[6] and *Lukis v. Whitepages Inc.*, <u>454 F. Supp. 3d 746, 761</u> (N.D. Ill. 2020) (Feinerman, J.).  Indeed, *Dobrowolski* held that search

---

[6] *Dobrowloski II* was the plaintiffs' second attempt to state a viable claim. The same Court's order dismissing the prior iteration of the plaintiff's complaint also contains helpful analysis, *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, <u>2017 WL 3720170</u>, at *6-*7 (N.D. Ill. Aug. 29, 2017) ("*Dobrowolski I*").

results with *more* identifying information than the Information in Defendants' Website search results here was insufficient to constitute use of an individual's "name."

In *Dobrowolski II*, the defendants hosted a website that sold informational reports about individuals.  2018 WL 11185289, at *1.  Following a name search, the website displayed a results page indicating "people who shared the same first and last names" and their "age, *employment history, and location*."  *Id*. (emphasis added).  The district court held that these allegations failed to show that the websites did not use the plaintiffs' "identity" because there was not enough information to identify them in the list of search results.  *Id*.  The Court explained that the Illinois statute

> only protects unauthorized use of an individual's name . . . <u>when that name (either alone or in combination with other factors) is sufficient to identify the plaintiff</u>"— i.e., a plaintiff must "allege facts to plausibly infer that she was identified to a reasonable audience by the defendant's use of her name or likeness."

*Dobrowolski I*, 2017 WL 3720170, at *6-7 (emphasis added).  The information on the website's search results page did not have enough information to "identify plaintiffs, as opposed to another individual with the same name."  *Dobrowolski II,* 2018 WL 11185289, at *1.

The same court's subsequent decision in *Lukis*, 454 F. Supp. 3d 746, provides a helpful contrast.  That court, analyzing a similar website with a name search function, distinguished *Dobrowolski II* and found that it was "plausible" that someone could identify those plaintiffs in a list of search results that included "*far more* than [just] the names," including telephone numbers, addresses, and possible addresses.  *Id*. at 761 (emphasis added).

Finally, the Seventh Circuit's decision in *Dancel v. Groupon, Inc*., 949 F.3d 999 (7th Cir. 2019) is also illustrative of this point.  In *Dancel*, the Seventh Circuit rejected the argument that Instagram usernames "are names or identities . . . because an ordinary, reasonable viewer would

know that a username is intended to identify one and only one user." *Id*. at 1008.  The Seventh

Circuit explained that the Illinois statute:

> demands that an attribute, even a name, serve to identify an individual. And not just *an* individual but "*that* individual," the one whose identity is being appropriated. This is a comparative exercise that depends on both the specific individual and the specific appropriated attribute in question and cannot be solved categorically here.

*Id*. at 1009 (emphasis added).  Put simply, Gaul must show "that it is *her* identity that the

defendant appropriated," and not just that a first name and last initial matching hers appeared in a

set of search results.  *Id*.  "Not all photographs, names, or usernames will do so . . .."  *Id*.

The principles in *Dancel*, *Dobrowolski II*, and *Lukis* have easy application to Gaul's

claim.  As shown in Plaintiffs' Complaint, the Website's search results page shows *only* a first

name, last initial, associated city and state, and sometimes an age.  Compl. ¶ 23, fig. 1.  Like

*Dobrowolski II* (where search results had more identifying details including employment

history), Defendants' search results do not have enough information for a "ordinary, reasonable

viewer or listener" to identify Gaul, and thus, there can be no exploitation of her identity.

### 3. This Court should dismiss Bensen's Ohio right of publicity claim because the website does not use her "persona" (Count I).

This Court should dismiss Bensen's Ohio publicity claim for the same reasons.  Ohio

lacks relevant case law on this issue, This Court should follow the Illinois law above,

considering the dearth of relevant Ohio case law, the persuasive reasoning of Illinois' decisions,

and Ohio's more restrictive definition of "persona" in the Ohio statute.  *Compare* Ohio Rev.

Code § 2741.01(A)) (defining "persona" as including an individual's name if the name has

"commercial value") *and* 765 ILCS 1075/5 (defining "identity" as including an individual's

name if it serves to "identify that individual to an ordinary, reasonable viewer"); *See Also Harvey

v. Sys. Effect*, LLC, 154 N.E.3d 293 (Ohio App. 2020) (noting lack of Ohio and Federal cases

interpreting the statute); *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000) (citations omitted) ("courts typically give attention to the entire available body of case law when deciding right of publicity cases" due to "exceedingly rare" case law and the "constitutional policy of maintaining uniformity").

        4.   <u>This Court should dismiss Harris' Indiana publicity claim because the website does not use her "personality" (Count III).</u>

For the same reasons, the appearance of a first name and last initial that matches Harris' name in a list of search results is insufficient to identify her specifically, and therefore is not a use of her "identity." Like Ohio, Illinois case law is persuasive because Indiana lacks decisional law on this issue, and Indiana employs a narrower definition of "personality." *Compare* Ind. Code § 32-36-1-6) (defining "personality" as including a name that has "commercial value") *and* 765 ILCS 1075/5 (defining "identity" as including an individual's name if it serves to "identify that individual to an ordinary, reasonable viewer"). *See Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859 (Ind. App. 2013) (Indiana courts have rarely examined" this statute).

**C.**    **This Court should dismiss Count I and III of Plaintiffs' Complaint because Plaintiffs do not have a commercially valuable "persona" or "personality."**

Unlike the Illinois law where a "plaintiff need not show her identity has value to prove a [right of publicity] claim, *Dancel*, 949 F.3d at 1009, the Ohio and Indiana publicity statutes ***expressly require*** that an individual's "persona" (Ohio) or "personality" (Indiana) have "commercial value" to be actionable. This express requirement is rooted in the common law principle that "[t]he right of publicity is designed to reserve to a celebrity the personal right to exploit the commercial value of his own identity" against misappropriation or dilution. *Landham*, 227 F.3d at 624.

1. This Court should dismiss Bensen's Ohio right-of-publicity claim (Count I) because her "persona" does not have independent commercial value.

Under Ohio law, an individual's "'[p]ersona' means [their] name, voice, signature, photograph, image, likeness, or distinctive appearance, *if any of these aspects have commercial value*." Ohio Rev. Code § 2741.01(A) (emphasis added).  The Ohio Court of Appeals enforced the "commercial value" requirement in *Harvey*, 154 N.E.3d 293.  In *Harvey*, a former homeowner claimed that inclusion of her name in for-profit educational materials for realtors violated her right of publicity.  *Id*. at 299.  Following a comprehensive discussion of the development of publicity rights, the Ohio appellate court concluded that the Ohio right of publicity law required a claimant to show that her "persona" has "significant" commercial value to have viable claim.  *Id* at 306.  Thus, the Ohio appellate court affirmed dismissal of the homeowner's claim because she "failed to present any evidence that her name had significant value or, indeed, any commercial value."  *Id*.

Following *Harvey*, this Court should dismiss Count I with prejudice because Bensen does not allege that she has a "persona" with commercial value, let alone "significant value."

2. This Court should dismiss Harris' Indiana right-of-publicity claim Court should dismiss Bensen's Ohio right-of-publicity claim (Count III) because her "personality" does not have independent commercial value.

The Indiana publicity statute defines an individual's "personality" as a "person whose (1) name; (2) voice; (3) signature; (4) photograph; (5) image; (6) likeness; (7) distinctive; appearance; (8) gesture; or (9) mannerisms; *has commercial value* . . .." Ind. Code § 32-36-1-6 (emphasis added).  The Indiana rules of statutory interpretation require courts to "read each word and phrase in this plain, ordinary, and usual sense," *Porter Dev., LLC v. First Nat'l Bank of Valparaiso*, 866 N.E.2d 775, 778 (Ind. 2007), and "presume[s] that the legislature is aware of the common law and intends to make no change [to it]." *Hinshaw v. Bd. of Comm'rs*, 611 N.E.2d

637, 639 (Ind. 1993).  Here, the plain and ordinary meaning of "commercial value" means independent value developed through celebrity or notoriety, the same as that recognized by the common law.  *See* Ind. Code § 32-36-1-1(c)(4); H.E.A. 1258, 117th Gen. Assemb., 2d Reg. Sess. (Ind. 2012) (removing claims for individuals whose "personality" has "commercial value" only due to being convicted of a crime).

For these reasons, this Court should dismiss Count III with prejudice because Harris does not allege that she has a "personality" with "commercial value."

> **D.      This Court should dismiss Plaintiffs' Complaint because Plaintiffs cannot show that the potential appearance of their Information in search engine results is a "commercial purpose."**

Plaintiffs' Complaint also fails because they fail to allege that Defendants used their Information for a "commercial purpose."  Under these state statutes, not every use of an individual's name in conjunction with a profit-earning enterprise constitutes a use for a "commercial purpose."  *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 27 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017).

Rather, as this Court observed in *Kam IV*, 2017 WL 3083166, these statutes draw a sharp distinction between an "incidental use" and "deliberate[] exploit[ation]."  Indeed, many states have recognized this distinction under their respective publicity statutes.  *Harvey*, 154 N.E.3d at 307 (Ohio); *Yonghong Cheng*, 992 N.E.2d 859 (Indiana); *Dobrowolski*, 2018 WL 11185289, *3 (Illinois); *Tropeano*, 400 N.E.2d 847, 850 (Massachusetts); *Stayart*, 710 F.3d 719, 723 (Wisconsin); *Lohan v. Perez*, 924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013) (New York); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006) (Florida).

"No one has the right to object merely because his name or his appearance is brought before the public," Restatement (Second) of Torts § 652, cmt. d, and use of a name "primarily

for the purpose of communicating information" is not a commercial purpose. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 930 (6th Cir. 2003) (internal quotation omitted).  Thus, numerous courts have held that the mere appearance of a name on a for-profit website's search results does not constitute "a commercial purpose." *Dobrowolski II*, 2018 WL 11185289 (applying Illinois law) (for-profit website allowing search results for the individual searched); *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) (applying Illinois law) (for-profit website showing docket entries matching the individual searched); *Stayart v. Google Inc.*, 710 F.3d 719, 723 (7th Cir. 2013) (applying Wisconsin law) (for-profit search engine showing websites matching name searched).

Like the websites in *Dobrowolski II*, *Nieman,* and *Stayart,* Defendants' Website has a search function that shows a list of reports that may match a website user's query of a specific name.  Compl. ¶¶ 2, 23.  The search results page is used only to "communicat[e] information" that reports matching the search query might exist.  *See ETW*, 332 F.3d at 930. Defendants do not actively publish the Plaintiffs' identities on their website.  Rather, partial names matching the Plaintiffs might appear depending on the search criteria used by a user. *C.f.*, *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509 (7th Cir. 2014) (grocery store's publication of full-page congratulatory message to Michael Jordan in a magazine (with grocery store's logo prominently displayed next to Jordan's image) was a misappropriation Jordan's commercial identity).

   1.   Statutory definitions of "commercial purpose."

*Ohio*, in relevant part, defines a "commercial purpose" as use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted . . .; [2] [f]or advertising or

soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted . . ..”  Ohio Rev. Code § 2741.01(B).

*Illinois*, in relevant part, defines “commercial purpose” as “the public use or holding out of an individual’s identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; [or] (ii) for purposes of advertising or promoting products, merchandise, goods, or services . . ..”  735 ILCS 1075/5.

*Indiana*, in relevant part, defines “commercial purpose” as the “use of an aspect of a personality’s right of publicity . . .  (1)  on or in connection with a product, merchandise, goods, services, or commercial activities; [or] (2) for advertising or soliciting purchases of products, merchandise, goods, services, or for promoting commercial activities.”  Ind. Code § 32-32-1-2.

In sum, Ohio, Illinois, and Indiana have substantially similar definitions of “commercial purpose.”  As all three states recognize the distinction between incidental use and “deliberate exploitation,” all cross-jurisdictional case law applying the distinction is persuasive.  *Harvey,* 154 N.E.3d at 307 (Ohio); *Yonghong Cheng*, 992 N.E.2d 859 (Indiana); *Dobrowolski*, 2018 WL 11185289, *3 (Illinois).

> 2.  The appearance of Plaintiffs’ Information in search engine results was not a “commercial purpose” under Illinois, Indiana, or Ohio law.

The District Court for the Northern District of Illinois addressed this exact question in *Dobrowolski II,* 2018 WL 11185289, at *3.  In *Dobrowolski II,* 2018 WL 11185289, at *1, the defendants operated a website that “sold informational reports that included things like an individual’s arrest record, background check, address, and phone number.”  To draw traffic to their website, the defendants purchased ads on Google and Bing’s search engines. *Id.* Specifically, when a website user searched a name on a search engine, the results included the

defendant's dynamic ad stating that it had a report available for the exact name searched.  *Id.*

The District Court held that this use did not constitute a "commercial purpose":

> The marketing page lists defendants' reports that are available for purchase, and for each listing there is a preview of the information in the underlying report. The plaintiffs' identities are not used to promote a separate product—***they are used because plaintiffs' identities are part of the product offered for sale***. ***And this is not a commercial purpose as defined by the statute.***

*Id.* (citing *Thompson v. Getty Images, Inc.*, No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1,

2013) (showing a buyer a photograph of a person that is offered for sale is not a commercial

purpose) (add'l citation omitted; emphasis added; parenthetical altered)).  *See also Nieman*, 2012

WL 3201931, *aff'd*, 512 F. App'x 635 ("identity is not being used for a 'commercial purpose' . .

. because his name is used only to find documents" in a search engine).

The Seventh Circuit's decision in *Stayart*, 710 F.3d 719, is also instructive.  *Stayart*

related to Google, the popular search engine that "compiles information available on the internet

into a single database, enabling users to streamline and expedite searches for online content."  *Id.*

at 721.  When a Google user searched a name, Google's results would include websites matching

that name, and advertisements from advertisers who paid for their advertisements to appear when

a Google use searched that specific term.  *Id.*  Despite Google earning add revenue based on

users searching for specific names, the Seventh Circuit considered the use incidental and non-

actionable.  *Id.*  Under *Dobrowolski II, Nieman, and Stayart*, the mere appearance of a name in

search results, even when incorporated into a website revenue general model, does not constitute

a "commercial purpose"

Finally, Defendants' provision of public reports on a subscription basis does not change

the outcome.  A Website user on any search result page may be on that page because they

searched for a specific name.  If they purchase Defendants' product, they obtain the report for the

searched-for name *and other reports*.  In other words, the Website's payment model does not

change the fact that the purpose of the search results page is solely to inform the user conducing

the search that records matching the search might be available.  This is no different than

Google's sale of ad placements on search results pages in *Stayart*, 710 F.3d 719; s*ee also Harvey*,

154 N.E.3d at 307 (product that allegedly misappropriated identity was sold individually and as

part of a bulk product).  Accordingly, this Court should dismiss Plaintiff's Complaint because its

fails demonstrate use of their Information with a "commercial purpose."

       **E.**     **This Court should dismiss Plaintiffs' Complaint because Plaintiffs fail to allege their Information was ever published to third parties.**

      Finally, Plaintiffs' Complaint fails because it fails to plausibly allege the actual "use" of

their information – *i.e.,* an exploitative *publication*—as required by statute.  *See* Ohio Rev. Code

§ 2741.02 ("shall not use"); 765 ILCS 1075/5 ("public use or holding out of an individual's

identity") and 765 ILCS 1075/30 ("may not use"); Ind. Code § 32-36-1-8(a) ("may not use").

Without publication, Plaintiffs also could not have suffered any harm.[7]

      Unlike a general advertisement or publication, the search results pages of which

Plaintiffs complain provide partial names matching the Plaintiffs *only if* the user first conducts a

search using a Plaintiff's name.  Compl. ¶ 2.  Without that specific search query, no results page

is generated.  Here, the Plaintiffs allege that *they* each "discovered" that their identities appeared

on the Website in 2021.  Compl. ¶ 30.  Given the absence of any allegation that anyone actually

searched for Plaintiffs' names and viewed potentially matching information on results pages, or

any allegation that there is any material likelihood that anyone would search for Plaintiffs'

particular names in, the only plausible reading is that the only people who have searched for the

Plaintiffs are themselves, or their counsel.  Plaintiffs viewing their own names does not

---

[7] The Ohio statute provides for liability only "to the person injured by the violation." Ohio Rev. Code § 2741.02. No Plaintiff, including Bensen alleges an actionable injury. See e.g., Section I.

constitute any "use" under the statutes and could not have caused Plaintiffs any harm.  *See also TransUnion*, 141 S. Ct. 2190, 2209-10 (individual cannot be harmed by dormant information that resides in a company's database).  For this additional reason, this Court should dismiss the Plaintiffs' Complaint with prejudice.

III.   **Alternatively, this Court should dismiss Plaintiffs' Complaint because Defendants' public records reports are subject to the public records exemption.**

Finally, the right-of-publicity laws of Ohio, Illinois and Indiana all recognize an exemption from liability when the substance of information is a matter of public affairs or public interest.  Defendants' reports fall into that exemption because they contain only aggregated public information.  See Compl. ¶ 23.

A.  **The statutory public records exemptions.**

The ***Ohio*** law, in relevant part, exempts from liability the "use of an aspect of an individual's persona *in connection with* the broadcast or reporting of an event or topic of *general or public interest*," Ohio Rev. Code § 2741.09(A)(3) (emphasis added); or "in connection with any *news, public affairs*, sports broadcast, or account."  Ohio Rev. Code § 2741.02(D)(1) (emphasis added).

The ***Illinois*** law, in relevant part, does not apply to the "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign," 765 ILCS 1075/35(b)(2) (emphasis added), and "promotional materials, advertisements, or commercial announcements" related to that use, 765 ILCS 1075/35(b)(4).

The ***Indiana*** law, in relevant part, exempts from liability the use of an individual's personality "in connection with the broadcast or reporting of an event or a *topic of general or public interest*," Ind. Code § 32-36-1-1(c)(3); and "[m]aterial that has political or *newsworthy*

*value*," including any related "advertisement or commercial announcement," § 32-36-1-1(c)(1)(B), (D).

**B.  Defendants' public records reports are entitled to the public records exemption.**

In *Nieman*, 2012 WL 3201931, at *1, *4, the Central District of Illinois held that the "public affairs" in 765 ILCS 1075/35(b)(2) and (4) applied to a website's sale of public record reports and the promotion of those reports.  In *Nieman*, an internet search for the plaintiff's name yielded the defendant's website, which sold aggregated court docket entries matching that his name for $4.95. *Id*. at *4.  The district court concluded that the public affairs exception applied because the "name [was] used only to find documents related to his case, which are part of the public record.  *Id*.  *See also Stayart*, 710 F.3d 719, 723 (applying Wisconsin law) ("search providers and indexes that lead the public to [court] documents or that capture key terms related to them" are entitled to the public interest exception); *Lukis*, 454 F.Supp.3d 746, 763 ("a report might be protected from liability if it were limited to information gleaned from judicial records").  The *Nieman* court also noted that the plaintiff's theory was troublesome because it would allow "every person who is involved in litigation who has public court documents that can be accessed for a fee on the Internet by doing a browser search" to file a right of publicity claim.

The principle in *Nieman is* directly applicable to this case. Plaintiffs admit the reports contain only matters of public record.  *See* Compl. ¶ 23.  Defendants' alleged use of public information about Plaintiffs is protected from liability by the Illinois public interest exceptions.  Similarly, Defendants' reports are exempt under Ohio and Indiana law because their content relates to:  (A) matters of "general or public interest," and "in connection with any news [and] public affairs" under Ohio Law, Ohio Rev. Code § 2741.09(A)(3); § 2741.02(D)(1), and matters

of "general or public interest" and material that has "political or newsworthy value" under

Indiana law, Ind. Code §§ 32-36-1-1(c1)(B)(D); (c)(3).

## **CONCLUSION**

Wherefore for the reasons set forth above, this Court should enter an order:

(a)     Dismissing Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1)

for lack of Article III standing;

(b)     Dismissing Plaintiffs' Complaint with Prejudice under Federal Rule of Civil

Procedure 12(b)(6) for failing to state a claim under:  (i) Ohio Right of Publicity Law, Ohio Rev.

Code § 2741.02, et seq. (Count I); (ii) Illinois Right of Publicity Act, 765 ILCS 1075/1, et seq.

(Count II); or (iii) the Indiana Right of Publicity Law, Ind. Code § 32-36-1 (Count III); and

(c)     for any other relief in Defendants' favor that this Court deems appropriate.

Respectfully submitted,
INFOPAY, INC. and
INTERMEDIA VENTURES LLC

By their attorneys,

*s/ Chirag H. Patel*
Chirag H. Patel (admitted *pro hac vice*)
Myriah V. Jaworski (admitted *pro hac vice*)
Beckage PLLC
420 Main St., Suite 1110,
Buffalo, New York 14202
716-898-2102 (phone)
mjaworski@beckage.com
cpatel@beckage.com

*s/ Payal Salsburg*
Payal Salsburg, BBO No. 568812
Laredo & Smith, LLP
101 Federal Street, Suite 650
Boston, MA 02110
617-443-1100 (phone)

Dated: March 1, 2022

617-443-1174 (fax)

Dated: March 1, 2022                      salsburg@laredosmith.com

## <u>CERTIFICATE OF SERVICE</u>

I, Chirag Patel, hereby certify that on March 1, 2022, I caused this document to be served by CM/ECF upon all counsel of record and parties who have appeared in the case.

*s/ Chirag H. Patel*_____
Chirag H. Patel
