**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LORETTA BENSEN, SHERRY GAUL and SHONTONNA HARRIS, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>INFOPAY, INC., a Delaware Corporation, and INTERMEDIA VENTURES LLC, a Massachusetts limited liability company,<br><br>     Defendants. | Civil Action No.: 1:21-cv-12061-ADB |

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Dated:  March 29, 2022

**BIRNBAUM & GODKIN, LLP**
David S. Godkin
1 Marina Park Drive, Suite 1410
Boston, MA  02210
Telephone:  (617) 307-6110
Email:  godkin@birnbaumgodkin.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jarisohn@bursor.com
   pfraietta@bursor.com

**EDELSON PC**
J. Eli Wade-Scott (*Pro Hac Vice*)
Michael W. Ovca (*Pro Hac Vice*)
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Telephone: (312) 561-6370
Facsimile: (312) 589-6378
Email: ewadescott@edelson.com
   movca@edelson.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

                                                                        PAGE(S)

INTRODUCTION ................................................................................................ 1

STATUTORY AND FACTUAL BACKGROUND .................................................. 3

ARGUMENT ..................................................................................................... 6

I.      PLAINTIFFS HAVE ARTICLE III STANDING ................................... 6

        A.      Plaintiffs have alleged a concrete injury .................................. 6

        B.      Plaintiffs need not allege who specifically viewed their data to
                have standing ......................................................................... 10

II.     EACH PLAINTIFF STATES A PRIMA FACIE CLAIM FOR RELIEF ...... 13

        A.      Each Plaintiff was "identified" as defined under their respective
                statute ................................................................................... 14

        B.      Plaintiffs allegations satisfy each statute's "use" and/or
                "publication" requirements .................................................... 20

        C.      Plaintiffs' identities were used for a commercial purpose ................... 22

        D.      Plaintiff Bensen and Plaintiff Harris' identities have commercial
                value ...................................................................................... 24

III.    THE STATUTES' PUBLIC RECORDS EXEMPTIONS DO NOT
        APPLY TO PLAINTIFFS' CLAIMS ................................................. 26

CONCLUSION ................................................................................................ 29

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Allen v. Wright,*
   468 U.S. 737 (1984) ................................................................................................ 12

*Beck v. McDonald,*
   848 F.3d 262 (4th Cir. 2017) .................................................................................. 12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................ 13

*Callahan v. Ancestry.com,*
   2021 WL 2433893 (N.D. Cal. June 15, 2021) ......................................................... 9

*Carrier Corp. v. Outokumpu Oyj,*
   673 F.3d 430 (6th Cir. 2012) .................................................................................. 13

*Dancel v. Groupon, Inc.,*
   949 F.3d 999 (7th Cir. 2019) ............................................................................ 19, 20

*Daniels v. FanDuel, Inc.,*
   109 N.E.3d 390 (Ind. 2018) ................................................................................. 9, 28

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.,*
   958 F.3d 38 (1st Cir. 2020) ..................................................................................... 12

*Dobrowolski v. Intelius, Inc.,*
   2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) .......................................................... 19

*Dobrowolski v. Intelius, Inc.,*
   2018 WL 11185289 (N.D. Ill. May 21, 2018) ..................................................... 19, 23

*Eichenberger v. ESPN, Inc.,*
   876 F.3d 979 (9th Cir. 2017) ..................................................................................... 7

*Felsher v. Univ. of Evansville,*
   755 N.E.2d 589 (Ind. 2001) .................................................................................. 8, 25

*Fox v. Dakkota Integrated Systems, LLC,*
   980 F.3d 1146 (7th Cir. 2020) ................................................................................... 7

*Harvey v. Systems Effect, LLC,*
   154 N.E. 3d. 293 (Ohio App. 2020) .................................................................... 24, 26

*In re Blackbaud, Inc. Consumer Data Breach Litig.*,
   2021 WL 2718439 (D.S.C. July 1, 2021) ................................................................ 11, 13

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................... 7

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012) .................................................................................... 12

*Knapke v. PeopleConnect Inc.*,
   2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) ............................................ passim

*Kolebuck-Utz v. Whitepages Inc.*,
   2021 WL 1575219 (W.D. Wash. April 22, 2021) ............................................ passim

*Krause v. RocketReach, LLC*,
   2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) .................................................. passim

*Langadinos v. Am. Airlines, Inc.*,
   199 F.3d 68 (1st Cir. 2000) .................................................................................... 14

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................ 6, 11

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020) .............................................................. passim

*Lukis v. Whitepages Inc.*,
   549 F. Supp. 3d 798 (N.D. Ill. 2021) ............................................................ 2, 7, 8, 11

*McMorris v. Carlos Lopez & Assocs., LLC*,
   995 F.3d 295 (2d Cir. 2021) .................................................................................. 12

*Nieman v. Versuslaw, Inc.*,
   2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ...................................................... 23, 28

*Nollet v. Justices of Trial Court of Mass.*,
   83 F. Supp. 2d 204 (D. Mass. 2000) .................................................................. 13, 14

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) ................................................................................ 7

*Persinger v. Sw. Credit Sys., L.P.*,
   20 F.4th 1184 (7th Cir. 2021) ................................................................................ 6

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) .............................................................................. 9, 10

*Roe v. Amazon.com*,
   170 F. Supp. 3d 1028, 1030 (S.D. Ohio 2016) ........................................................ 25

*Scanlan v. Eisenberg*,
   669 F.3d 838 (7th Cir.2012) ...................................................................................... 10

*Sessa v. Ancestry.com Operations Inc.*,
   2021 WL 4245359 (D. Nev. Sept. 16, 2021)..................................................... passim

*Siegel v. Zoominfo Techs., LLC*,
   2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) .................................................... passim

*Simon v. E. Kentucky Welfare Rts. Org.*,
   426 U.S. 26 (1976) ..................................................................................................... 12

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016).................................................................................................. 6

*Stayart v. Google, Inc.*,
   710 F.3d 719 (7th Cir. 2013) ..................................................................................... 24

*Thompson v. Getty Images, Inc.*,
   2013 WL 3321612 (N.D. Ill. July 1, 2013) ............................................................... 23

*Trannel v. Prairie Ridge Media*,
   987 N.E. 2d 923 (Ill. App. Ct. 2013)..................................................................... 20, 21

*TransUnion LLC v. Ramirez*,
   141 S.Ct. 2190 (2021)................................................................................................. 11

*U.S., ex rel. Osheroff v. HealthSpring, Inc.*,
   938 F. Supp. 2d 724 (M.D. Tenn. 2013) .................................................................... 20

*Uzuegbunam  v. Preczewski*,
   141 S. Ct. 792 (2021).................................................................................................... 7

*Vera v. Bureau of Indian Affairs*,
   738 F. App'x 431 (9th Cir. 2018) ............................................................................... 13

*Vinci v. American Can Co.*,
   459 N.E.2d 507 (Ohio 1984) ...................................................................................... 25

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018)........................................................................ 7

*Yershov v. Gannet Satellite Info. Network, Inc.*,
   204 F. Supp. 3d 353 (D. Mass. 2016).......................................................................... 6

*Zacchini v. Scripps-Howard Broad. Co.*,
  433 U.S. 562 (1977) ........................................................................................................ 8

## STATUTES

765 ILCS 1075/1 .............................................................................................................. 1

765 ILCS 1075/5 ............................................................................................................ 14

765 ILCS 1075/10 ............................................................................................................ 8

765 ILCS 1075/30 .......................................................................................................... 10

Cal. Civ. Code § 3344 ...................................................................................................... 9

Ind. Code § 32-36-1 ........................................................................................................ 1

Ohio Rev. Code § 2741 .................................................................................................... 1

Ohio Rev. Code § 2741.01(A) & (C) ............................................................................. 14

Ohio Rev. Code § 2741.02 ............................................................................................. 10

## **INTRODUCTION**

The Ohio Right of Publicity Statute, Ohio Rev. Code § 2741, *et seq.*; (the "ORPS" or the "Ohio Statute"), the Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.*, (the "IRPA" or "Illinois Statute"), and the Indiana Right of Publicity Law, Ind. Code § 32-36-1, *et seq.*, (the "IRPL" or the "Indiana Statute") (collectively, the "Statutes") each prohibit using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent.  Staterecords.org, the website operated by Defendants InfoPay Inc. ("Infopay") and Intermedia Ventures LLC ("Intermedia"), (collectively, "Defendants" or "StateRecords") uses the identities of Ohio, Illinois, and Indiana residents in free preview advertisements to promote their subscription services.  Because these individuals never consented to this use of their identities, Plaintiffs Loretta Bensen, Sherry Gaul, and Shontonna Harris respectively allege that Defendants have violated their and others' rights under the ORPS, IRPA, and IRPL.

Multiple courts have already examined virtually identical allegations and rejected identical arguments to those Defendants raise here.  *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020), reconsideration denied, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) (Feinerman, J.) (applying IRPA); *Krause v. RocketReach, LLC*, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) (same); *Siegel v. Zoominfo Techs.*, LLC, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) (same); *accord Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219 (W.D. Wash. April 22, 2021) (applying ORPS); *Knapke v. PeopleConnect Inc.*, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) (same); *Sessa v. Ancestry.com Operations Inc.*, 2021 WL 4245359 (D. Nev. Sept. 16, 2021) (analyzing Nevada's Right of Publicity law, analogous to those here.); *Boshears v. PeopleConnect*

*Inc.*, No. 2:21-cv-01222-MJP, Dkt. No. 46. (W.D. Wash. Mar. 25, 2022) (analyzing IRPL).[1]

The arguments advanced by Defendants' motion to dismiss (the "Motion" or "MTD") tread no new ground.  They should all be rejected.  First, Defendants argue that Plaintiffs assert a speculative—rather than concrete—injury, and thus have no Article III standing.  But multiple courts have held in identical contexts (and examining the same or analogous statutes) that the invasion of long-recognized privacy rights is itself a concrete harm sufficient to support Article III standing.  *See, e.g. Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021); *Sessa*, 2021 WL 4245359, at *5.  Here, Plaintiffs have already alleged the invasion of those rights, and the ongoing publication of their identities as a tool to sell Defendants' subscriptions means there is no speculation as to the harm they've suffered.

Second, Defendants argue that (i) Plaintiffs fail to plead prima facie IRPL, IRPA, and ORPS claims, and (ii) Defendants are immune from suit under the laws' statutory exemptions for public records.  Defendants are wrong.  Plaintiffs satisfy each of the Statutes' pleading requirements by alleging that Defendants used Plaintiffs' identifying information in free preview advertisements to enrich themselves without obtaining the proper consent, and that—for the OPRS and IPRL—Plaintiffs' identities had commercial value.  Moreover, all of Defendants' exception-based arguments miss the mark because they myopically focus on the *content* of Defendants' databases—not the *actions* Defendants took to monetize that data through the use of Plaintiffs' identities in their advertisements.

Plaintiffs plausibly state a claim for relief.  The Court should deny Defendants' motion to dismiss in its entirety.

---

[1] Hereinafter, "*Boshears.*"  Attached hereto as Exhibit A.

## STATUTORY AND FACTUAL BACKGROUND

Defendants sell paid subscription access to information about individuals on Staterecords.org ("StateRecords").  Class Action Complaint, dkt. 1 ("Compl.") ¶ 1-2, 22-23. Defendants compile and generate the content they sell on their website and the advertising at issue here.  *Id.* ¶¶ 1-2, 22.  When a non-subscriber visits StateRecords and searches for an individual by first and last name, city, and state, the site displays a list of "free previews" of individuals found within its records that have the same name.  *Id.* ¶¶ 2, 22-27.  Each free preview contains an individual's name and other uniquely identifying information, such as current location, previous locations, age, and the number of government-generated records associated with that person.  *Id.* ¶ 2.



*Id.*; Figure 1.  Once a consumer clicks the searched individual's name or "PROCEED," StateRecords displays another advertisement stating that the "[r]eport on [the searched individual] from [state of residence] is Ready!"  *Id.* ¶25.  But the "report" is only available by subscribing to StateRecords' 7-day trial, which offers "unlimited search access" for $4.95. *Id.*



*Id.* Figure 2. Once a user selects the link for the 7-day trial, StateRecords displays a checkout page where users must input their payment information and check a box certifying that after the 7-day trial, they will be automatically enrolled in a monthly subscription plan and their card will be charged $19.95 per month on a recurring basis unless and until they cancel. *Id.* ¶ 26.



*Id.* Figure 3.  There is no option or ability, as Defendants imply, (MTD at 1) to purchase a single

report about an individual *a la carte* without concurrently subscribing to Defendants' recurring

paid subscription services, *see* Compl., Figure 2.  Nor did Defendants obtain consent, written or

otherwise, before using any individual's name or information in the free preview advertisements.

*Id.* ¶¶ 3, 29, 32, 47, 55, 63.  Plaintiffs filed this lawsuit after they discovered that their identifying

information was used on the StateRecords website to sell its subscription services.  *Id.* ¶ 30.

## ARGUMENT

### I.   PLAINTIFFS HAVE ARTICLE III STANDING

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016)

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  To assert an "injury-in-

fact," Plaintiffs must allege an "invasion of a legally protected interest that is concrete and

particularized and actual or imminent, not conjectural or hypothetical."  *Id.* at 1547 (internal

quotations omitted).  Defendants only challenge the first prong, arguing that Plaintiffs have

failed to establish a concrete injury, and that Plaintiffs' allegations are based only on speculative

harm.  MTD at 12–21.  Defendants are wrong.  Plaintiffs allege a concrete injury based on the

invasion of their legally protected privacy rights that exists without the need for speculation

regarding StateRecords' third-party users.

### A.   Plaintiffs have alleged a concrete injury

Plaintiffs have sufficiently alleged a concrete injury to maintain standing by claiming an

invasion of long-recognized privacy rights.  This in itself is a concrete harm sufficient to support

Article III standing, as courts throughout the country, including this District, are in accord in

recognizing.  *See, e.g. Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 362

(D. Mass. 2016) (finding standing to pursue claims under Video Privacy Protection Act because

"[t]he intangible harm allegedly suffered by [Plaintiff] from [Defendant's] alleged disclosure of

his PII is a concrete injury in fact.");  *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1193 (7th

Cir. 2021) (finding standing where plaintiff "testified that [Defendant] invaded her privacy ....

Under *Spokeo* and *Ramirez*, this is a concrete injury because it is analogous to the common law tort of intrusion upon seclusion."); *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1152 (7th Cir. 2020) ("The invasion of a legally protected privacy right, though intangible, is personal and real, not general and abstract."); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) ("the law has long recognized that a privacy invasion is itself the kind of injury that can be redressed in federal court"); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019) (defendant's collection of facial recognition data "invades an individual's private affairs and concrete interests"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) ("The complaint need not include economic injury to establish standing for the intrusion upon seclusion, invasion of privacy, or unjust enrichment claims"); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Violations of the right to privacy have long been actionable at common law").  Thus, "Plaintiffs have alleged concrete injury sufficient to confer standing because they seek relief for claims analogous to those available at common law."  *Sessa*, 2021 WL 4245359, at *4.[2]

Given the close connection between the statutes at issue here and traditional common law remedies, it is no surprise that Courts assessing whether individuals suing website operators for monetizing those individuals' identities have found Article III standing exists.  *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798 (N.D. Ill. 2021), analyzing standing under the IRPA, is directly on point:

> The common law recognized a "right of publicity," also called the "appropriation of likeness" tort…. The IRPA codified that common law tort, providing that "[t]he right to control and to choose whether and how to use an individual's identity for

---

[2]    Indeed, the Supreme Court recently found standing based on a purely legal injury, even though redressability rested solely on a claim to nominal damages. The Court reasoned: "A contrary rule would have meant . . . that there was no remedy at all for these rights . . . not readily reducible to monetary valuation." *Uzuegbunam  v. Preczewski*, 141 S. Ct. 792, 800 (2021).

commercial purposes is recognized as each individual's right of publicity," 765 ILCS 1075/10, and that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law," *id.* § 1075/60. Indeed, when introducing the IRPA in the Illinois General Assembly, its sponsor stated: "[W]hat this legislation does is it codifies the common law right of publicity in Illinois." H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24, 1997).

*Id.* at 805.  Thus, the *Lukis* court held, "it necessarily follows, under the analysis articulated in *Spokeo* and recently reiterated in *TransUnion*, that an IRPA violation inflicts a concrete injury-in-fact under Article III."  *Id.*  This was not a close call – the *Lukis* court stated that "[v]iolations of the IRPA are an **easy** case under the governing test[ for standing.]" *Id.* (emphasis added).  The court in *Sessa* engaged in essentially the same analysis—and reached the same conclusion—with respect to the Nevada Right of Publicity Act:

> The [Nevada Right of Publicity] Act did not create previously unrecognized claims by legislative fiat.  Rather, the right of publicity has existed at common law, and the legislature codified the right.  Plaintiffs have alleged injury recognized at common law because they assert that [Defendant] used their names and likenesses "to motivate a decision to purchase a particular product or service."

2021 WL 4245359 at *5.

These common-law roots are not limited to Illinois.  Both Ohio and Indiana courts have long recognized a common law claim for misappropriation of a likeness or name, which are codified through the IPRL and ORPS.  *See, e.g. Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 566 (1977) ("There is no doubt that petitioner's complaint was grounded in state law and that the right of publicity which petitioner was held to possess was a right arising under Ohio law."); *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593, 601 (Ind. 2001) (affirming injunction on behalf of individuals whose likenesses had been appropriated with "modest modification[,]" and noting that "[t]his Court has previously observed that the term 'invasion of privacy' is a label used to describe 'four distinct injuries: (1) intrusion upon seclusion, (2) **appropriation of [name or] likeness**, (3) public disclosure of private facts, and (4) false-light

publicity'") (emphasis added) (internal quotations and citations omitted); *Boshears* at 9 ("Boshears has alleged a violation of his 'right to control one's identity from direct appropriation' which the Court in *Daniels II* concluded 'would seem central to the right of publicity recognized in Indiana.'") (quoting *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 397 (Ind. 2018)). In short, the ORPS, IRPA, and IRPL were enacted to codify those specific states' long-standing common law rights to privacy. The fact that *other* states' statutes might not have the same common-law bases has no relevance here. (*See* MTD at 12–13.)

Defendants identify a single case going the other way. Mot. at 14 (citing *Callahan v. Ancestry.com*, 2021 WL 2433893 (N.D. Cal. June 15, 2021). But as the *Sessa* court explained, the analysis in *Callahan* is faulty because it failed to address the central question required by *Spokeo* and *Transunion*: whether the statutory injury in question (there, a violation of the California Right of Publicity Law, Cal. Civ. Code § 3344) "had a close common law analogue." *Sessa*, 2021 WL 4245359, at *5 (explaining that the *Callahan* court only looked to whether the plaintiff "assert[ed] either economic injury or violation of intangible privacy rights"). The analysis in *Lukis* and *Sessa* is faithful to what the Supreme Court requires, and—given the common law analogues under Illinois, Indiana, and Ohio law—their analyses demonstrate why the Plaintiffs have standing here.

Defendants' citation to *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) (MTD at 14) does not help their argument either. *Remijas* dealt with claims under Illinois and California's data breach acts, both of which required "actual damages" to sustain a violation. *Remijas*, 794 F.3d at 695. The *Remijas* court thus declined to find standing because the plaintiffs' allegation regarding damages were "abstract … particularly since the complaint does not suggest that the plaintiffs could sell their personal information for value." *Id.* More relevant

to the present case is the *Remijas* court's recognition that "'the actual or threatened injury required under Article III can be satisfied solely by virtue of an invasion of a recognized state-law right.'" *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (quoting *Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir.2012)).  As identified by *Lukis* and *Sessa*, such an invasion is present here.  And even if more were required, Plaintiffs in the instant case *have* alleged what the *Remijas* plaintiffs did not: that Defendants are using Plaintiffs' personal information—their identities—to obtain derive value for themselves through paid subscription services.  *See e.g.* Compl. ¶ 1-2, 4, 28.

In short, the injury codified by the IRPA, ORPS, and IRPL occurred when Defendants created free preview advertisements containing Plaintiffs' identities and used the previews to promote their website subscriptions. No more is required to allege a concrete Article III injury.

**B.    Plaintiffs need not allege who specifically viewed their data to have standing**

Defendants also argue that Plaintiffs' injuries cannot confer standing because "the existence of their injury depends on speculation regarding the conduct of third parties."  MTD at 16.  Effectively, Defendants argue that Plaintiffs must allege with specificity who exactly viewed their information.  But this is neither an element under the Statutes, nor required for Plaintiffs to allege an Article III injury—particularly at the pleading stage.

None of the three statutes under which Plaintiffs' claims arise require Plaintiffs to name who exactly viewed their previews.  Rather, the harm arises under Plaintiffs' allegations of *Defendants'* "use" of their identities.  *See* Ind. Code Ann. § 32-36-1-8 ("A person **may not use** an aspect of a personality's right of publicity for a commercial purpose") (emphasis added); 765 ILCS 1075/30  ("A person **may not use** an individual's identity for commercial purposes[.]") (emphasis added); Ohio Rev. Code § 2741.02 ("[A] person **shall not use** any aspect of an individual's persona for a commercial purpose.") (emphasis added).  As discussed *infra* § II.B.,

Plaintiffs' allegations satisfy each statute's "use" requirement.  No more is necessary at this time, as Plaintiffs have alleged a concrete harm through Defendants' violation of their statutory rights, both in the past and on an ongoing basis.  *See supra* § I.A.  Defendants' free previews are not hidden behind a paywall or unpublished.  Rather, they are *publicly accessible* to prospective customers.  Compl. ¶ 2.  What matters here are the allegations regarding Defendants' conduct: Defendants programmed their website to retrieve specific information about Plaintiffs, display it to website visitors, and generate subscription purchases.  *Id.* ¶¶ 1-2, 22-28.

That is sufficient to confer standing at the pleading stage, where Plaintiffs must simply *allege* facts showing standing.  *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021) ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive states of the litigation.'") (quoting *Lujan*, 504 U.S. at 561); *Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation omitted); *accord In re Blackbaud, Inc.*, 2021 WL 2718439, at *6 n.15.  Plaintiffs' allegations that Defendants used Plaintiffs' likeness to advertise Defendants' paid subscription services for Defendants' own commercial gain and without Plaintiffs' consent (*see* Compl. ¶¶ 1-4, 22-29, 30-32, 45, 47, 53, 55, 61, 63) suffice at this time to confer standing.  *See Lukis*, 549 F. Supp. 3d at 805 ("It necessarily follows, under the analysis articulated in *Spokeo* and recently reiterated in *TransUnion*, that an [Right of Publicity Statutory] violation inflicts a concrete injury-in-fact under Article III."); *accord Sessa*, 2021 WL 4245359, at *5–6 ("Ancestry has used Plaintiffs' likeness for commercial purposes, which suffices to establish injury in fact under the common law tort.").

11

Defendants' citations are inapposite.  Several involve instances where the information at issue was not made publicly available.  *Katz v. Pershing, LLC*, 672 F.3d 64, 70 (1st Cir. 2012) (finding no standing because there was no public access to the plaintiffs' personal information, claims were predicated on the mere *possibility* of public access "because it is inadequately protected by the defendant's service");  *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 298 (2d Cir. 2021) (dealing with unrelated data breach consumer protection claims and finding no standing because Plaintiffs "did not allege that the PII in the spreadsheet was ever shared with anyone outside of [Defendant's internal systems]" and did not allege that their data was "was in any way misused");  *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (finding no standing where "after extensive discovery, the *Beck* plaintiffs have uncovered no evidence that the information contained on the stolen laptop has been accessed or misused or that they have suffered identity theft, nor, for that matter, that the thief stole the laptop with the intent to steal their private information.").  Here, in contrast, Plaintiffs allege that their likenesses have *already* been made widely and publicly available by Defendants through their website.

Defendants' reliance on *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38 (1st Cir. 2020), *Allen v. Wright*, 468 U.S. 737 (1984), and *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26 (1976) is misplaced.  Each of those cases involved a chain of causation where there was some disconnect between the defendant's actions and the injuries alleged.  *See Dantzler*, 958 F.3d at 48 ("Dantzler fails to plausibly allege that PRPA's assessment and collection of ESFs from third parties not before the court -- i.e., the ocean freight carriers -- directly caused its injury.");  *Allen*, 468 U.S. at 759 ("The links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing.");  *Simon*, 426 U.S. at 42–43 ("It is purely speculative

whether the denials of service specified in the complaint fairly can be traced to petitioners' 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications.").  Here, Defendants' programming of their own website directly gives rise to the harm alleged: the misappropriation of Plaintiffs' identities to sell Defendants' subscriptions.

Finally, to the extent Defendants' arguments require factual inquiry into Plaintiffs' allegations, they are premature.  "A district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 443 (6th Cir. 2012).  "In other words, the district court is prohibited from making factual findings with respect to a jurisdictional issue when such a finding would adversely affect the merits of the plaintiff's case." *Id.* at 443-44; *see also Vera v. Bureau of Indian Affairs*, 738 F. App'x 431 (9th Cir. 2018) ("[W]here 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits,' challenges to the presence of jurisdictional facts must be treated as motions for summary judgment with the corresponding protections for the nonmoving party."); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, 2021 WL 2718439, at *6 n.15 (D.S.C. July 1, 2021).

Plaintiffs have alleged concrete injuries sufficient to confer Article III standing independent of any actions taken by StateRecords' users.

## II.     EACH PLAINTIFF STATES A PRIMA FACIE CLAIM FOR RELIEF

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice can be taken.  *Nollet v. Justices of Trial Court of Mass.*, 83

13

F. Supp. 2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the

Court must accept all factual allegations in the complaint as true and draw all reasonable

inferences in the claimant's favor.  *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.

2000).  If the facts in the claim are sufficient to state a cause of action, a motion to dismiss must

be denied.  *See Nollet*, 83 F. Supp. 2d at 208.

Here, each Plaintiff sufficiently alleges all that is necessary to plead a violation under the

IRPA, IRPL, and ORPS, and none of the statutory exceptions apply to immunize Defendants'

conduct.

A.      **Each Plaintiff was "identified" as defined under their respective statute**

Defendants first argue that Plaintiffs' "identities" are not at issue under the relevant

Statutes because the free previews do not specifically identify each individual Plaintiff as

opposed to simply search results sharing Plaintiffs' names.  MTD at 20.  Defendants are wrong.

The alleged use of Plaintiffs' names and other identifying information constitutes the use of (i)

"any attribute of an individual that serves to identify that individual" (IRPA, 765 ILCS 1075/5);

(ii) "the actual assumed, or clearly identifiable name of or reference to a living or deceased

individual that identifies the individual" (ORPS, Ohio Rev. Code § 2741.01(A) & (C)); and (iii)

"the actual or assumed name … that is intended to identify the person" (IRPL, Code § 32-36-1-

3).

The *Lukis* court, which the Defendants erroneously contend supports their position,

shows why Plaintiffs' allegations here are sufficient to show their identities were used:

> [Defendant] did far more than use the names [of Plaintiffs] in advertising its
> monthly subscription services … [Defendant] associated [Plaintiff] "Stephanie
> Lukis" with a middle initial, an age range, two telephone numbers, a Chicago
> address, a Virginia address, and as a relation of [Plaintiff's relative] Paul M. Lukis
> … Given this, it is entirely plausible, as Plaintiffs allege, that [Plaintiff] Stephanie
> Lukis could be uniquely identified as *the* Stephanie Lukis … referenced in the

14

previews. It follows that the previews used Plaintiffs' "identit[ies]" within the meaning of Section 30(a).

*Lukis*, 454 F. Supp. 3d at 761.  So too here.  By incorporating a range of identifying information, the descriptive information used by Defendants in their preview advertisements sufficiently identifies Plaintiffs to the exclusion of others who might happen to share their names.

To run a search on Defendants' website, a user inputs a first name, last name, and city and state of residence: [3]



When Defendants' first advertising page (*see* Compl. Figure 1.) appears as a result of inputting Plaintiffs' information (in the case of the Complaint, Plaintiff Loretta Bensen, as well as her city and state of residence) and clicking the "SEARCH" button, the advertisements include not only the Plaintiffs' first name and last initial, but also their age and place of residence:[4]

---

[3]        Screenshot from staterecords.org.  Inclusion of this screenshot is permissible here because the staterecords.org website and searches thereon are incorporated by reference into Plaintiffs' complaint.

[4]        Because only Plaintiff Bensen's screenshots are included in the Complaint, this section refers to Plaintiff Bensen alone when referencing the searches.  Search results for Plaintiffs Gaul and Harris are substantively identical.



Compl. Figure 1.  From this page, clicking on either "Loretta B" or "PROCEED" takes the user through the pages shown in the complaint:

//

//

//

//

//

//

//

//

//



*Id.* Figure 2.



*Id.* Figure 3.  Thus, while "Loretta B." alone may not be sufficient to identify Plaintiff Bensen

17

within the meaning of the IRPA, the pleadings establish that Defendants have associated the name with a search for Plaintiff's full name "Loretta Bensen," along with her current place of residence, four prior places of residence, and her age.

As in *Lukis*, "it is entirely plausible, as Plaintiffs allege, that [Plaintiffs] could be uniquely identified as *the* [Plaintiffs] … referenced in the previews. *Lukis*, 454 F. Supp. 3d at 761. "It follows that the previews" therefore "used Plaintiff['s] 'identit[y]' within the meaning of Section 30(a)." *Id.*; *see also Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219, at *2 (W.D. Wash. Apr. 22, 2021) ("Although use of identifying characteristics may not be required to represent a violation under the statute, Defendant's alleged use of Plaintiff's uniquely identifiable characteristics, further supports Plaintiff's allegation that it really was Plaintiff's name and persona that Defendant used, rather than the name of a similarly named person.") (*citing Lukis v. Whitepages*, 454 F. Supp. 3d 746, 761 (N. D. Ill. 2020)); *Knapke v. PeopleConnect Inc.*, --- F.Supp.3d ----, 2021 WL 3510350, at *5 (W.D. Wash. 2021) ("Knapke has stated a claim under the Right of Publicity Law. She has alleged that Classmates has used her persona—name and photograph—for a commercial purpose—selling Classmates' products and services. The Complaint's allegations more than satisfy these elements."); *Boshears* at 9 ("Boshears has sufficiently alleged a commercial use **of his personality**.")  (emphasis added).[5]

Defendants rely on a series of decisions from the *Dobrowolski* matter, but that case is distinguishable from the facts at issue here.  In *Dobrowolski*, the plaintiffs challenged the defendant's use of their names—without any additional identifying information—in dynamic

---

[5] Defendants off-handedly suggest that the IPRL and ORPS "employ[] a narrower definition of 'personality'" because [they] require[] "commercial value."  Defendants, however, never develop this argument, leaving entirely unexplained how "commercial value" factors into the identifiability analysis.  Defendants omit those logical links because no such links exist— commercial value has no bearing at all on whether information sufficiently identifies a particular person.  *See Lukis*, 454 F. Supp. 3d at 761.

advertising (i.e., in response to a Google search for Joe Smith, for example, a clickable ad would appear stating "We Found Joe Smith"). *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL 3720170, at *6 (N.D. Ill. Aug. 29, 2017). The court agreed that use of a plaintiff's alone—i.e., without any accompanying identifying information—was not enough to state a claim under the IRPA or "the pre-IRPA common law tort." *Id.* On amendment, the plaintiffs alleged that once an advertised name was clicked on, a user would be brought to a second page—the "marketing page"—which contained additional identifying details on multiple individuals bearing the searched for name. *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *1 (N.D. Ill. May 21, 2018). But while the marketing page use of individuals' names and other identifying details may have violated the IRPA (that was not an issue considered by the court), it did not help the plaintiffs' claim because there was no way to link any of the several names listed on the marketing page back to the single name listed in the defendants' dynamic search result advertising. *Id.* at *3 (explaining that "viewing the marketing page makes it no more or less likely that the [dynamic search result] ads identify plaintiffs, as opposed to another individual with the same name."). Here, in contrast to the dynamic search advertising at issue in *Dobrowolski*, *each* of the Defendants' free preview advertisements contains "more than name similarity," *Dobrowolski*, 2017 WL 3720170, at *6, (e.g., name, age, and places of residence) and, thus, falls more in line with *Lukis* and its progeny.

Defendants' reliance on *Dancel v. Groupon, Inc.* is similarly misplaced. In *Dancel*, the plaintiff's IRPA claim was based on misappropriation of Instagram usernames on the website Groupon.com, but without any further information to determine what individual was behind each username. *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1009 (7th Cir. 2019). Because a username, without more, was insufficient to identify the specific individual "whose identity is

being appropriated" the court found that the plaintiff could not maintain an IRPA claim.  *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1009 (7th Cir. 2019).  Here, in contrast, Defendants display more than just a name, including, for example, age and place of residence, in response to a user's search, allowing users to specifically identify not just any Sherry Gaul, Loretta Bensen or Shontonna Harris, but the precise individuals who filed this Complaint.

Multiple courts have found that precisely the type of advertising that Plaintiffs allege here is sufficient to identify Plaintiffs under the Statutes.  This court should not depart from that reasoning here.

### B.   Plaintiffs allegations satisfy each statute's "use" and/or "publication" requirements

Defendants, citing only *TransUnion*, contend that there are no allegations of an "actual 'use' of [Plaintiffs'] information" and Plaintiffs do not allege "that anyone actually searched for Plaintiffs' names and viewed potentially matching information on the results pages."  MTD at 30.  But Plaintiffs allege facts satisfying the IRPA, ORPS, and IRPL's "use" requirements.  *See Siegel*, 2021 WL 4306148, at *4 (rejecting similar argument); *Krause*, 2021 WL 4282700 at *1 (same).

Here, a public use is alleged because Defendants displayed Plaintiffs' information on a StateRecords' free preview page.  "Public use" is not specifically defined, but "the word 'public' is unambiguous and means the 'aggregate of the citizens' or 'everybody' or the 'people at large' or the 'community at large.'"  *Trannel v. Prairie Ridge Media*, 987 N.E. 2d 923, 929 (Ill. App. Ct. 2013).  Defendants' website was accessible by anyone with an Internet connection.  "[M]any court[s] have held that information on readily accessible public websites constitutes public disclosure."  *U.S., ex rel. Osheroff v. HealthSpring, Inc.*, 938 F. Supp. 2d 724, 732–33 (M.D. Tenn. 2013) (collecting cases).

20

"Use" or "public use" allegations do not require that Plaintiffs specifically identify who, if anyone, actually viewed Plaintiffs' information. This argument has been tried and rejected before. *See, e.g.*, *Krause*, 2021 WL 4282700, at *1 (rejecting argument that "plaintiff has not adequately alleged 'use' of her identity because she does not assert that anyone performed a search of defendant's database using her name"). Indeed, and as with any case concerning Internet content—which, by its nature, is only ever provided upon a user's request—it is impossible without discovery to allege specifically who viewed Defendants' online content. As discussed *supra* § II.A-B, "the complaint illustrates the alleged use of [Plaintiff's] name with an image of what appears to be the result of a search for ['Plaintiff']. Nothing more is required at this stage." *Krause*, 2021 WL 4282700, at *1.

*Trannel* is illustrative. There, the defendant used the plaintiff's photo on a media kit that was delivered to a few dozen individuals and businesses. *Id.* at 929. There were no allegations that recipients of the kit "viewed" the plaintiff's photo, but that didn't matter; because the defendant used the plaintiff's photo for inclusion on the kit, the "defendant was representing, or holding out, plaintiff's . . . identit[y]" with a commercial purpose. *Id.* at 930. The same holds here. Defendants programmed their website to retrieve specific information about Plaintiffs, display it to website visitors, and generate subscription purchases. Compl. ¶¶ 22-28. As in *Trannel*, that is sufficient to demonstrate the "use" of Plaintiffs' identities.

As numerous courts have found, including post-*TransUnion*, Plaintiffs' allegations regarding Defendants' use of their identities on its website are sufficient to satisfy the "use" requirements of IRPA, ORPS, and IRPL at the motion to dismiss stage. *See Lukis*, 454 F. Supp. 3d at 760 (IRPA); *Krause*, 2021 WL 4282700 at *1 (IRPA); *Siegel*, 2021 WL 4306148 at *3-4 (IRPA); *Knapke*, 2021 WL 3510350, at *5 (Finding ORPS claim where Plaintiff "has alleged

21

that Classmates has used her persona—name and photograph—for a commercial purpose—selling Classmates' products and services. The Complaint's allegations more than satisfy these elements."); *Boshears* at 9 (Finding IRPL's "use" element satisfied because "[a]s alleged in the Amended Complaint, the Classmates' website uses [plaintiff's] image to advertise a paid subscription to its services in at least two ways.  That is sufficient to show a commercial use."); *Sessa*, 2021 WL 4245359, at *6 (Finding claim under Nevada Right of Publicity Law where "Plaintiffs … allege that Ancestry's limited access users have accessed Plaintiffs' profiles, and when the users scrolled over the "View Record" link on the profile, they were presented with a pop-up advertisement bearing Plaintiffs' names and images that encouraged them to 'Sign Up Now' for a paid subscription… indicat[ing] that Ancestry has used Plaintiffs' likeness for commercial purposes, which suffices to establish injury in fact under the common law tort.").

### C.      Plaintiffs' identities were used for a commercial purpose

Next, Defendants argue that any use of Plaintiffs' identities was not for a commercial purpose.  MTD at 26-30.  This flies in the face of the conclusion reached by multiple courts reviewing nearly identical facts: Defendants' alleged conduct is "a textbook example … of using a person's identity for a commercial purpose."  *Lukis*, 454 F. Supp. 3d at 760; *see Krause*, 2021 WL 4282700, at *1 (addressing nearly identical allegations and concluding that, to establish an IRPA claim, "[n]othing more is required at this stage"); *Siegel*, 2021 WL 4306148, at *4 (same); *see also Kolebuck-Utz*, 2021 WL 1575219, at *2 ("Here, Plaintiff's complaint clearly alleges that Defendant displayed Plaintiff's name and identifying information on its website, in what has been described as a free preview, as an enticement to purchase Defendant's subscription service."); *Knapke*, 2021 WL 3510350, at *5 ("Knapke has stated a claim under the Right of Publicity Law."); *Sessa*, 2021 WL 4245359, at *6 (observing that the plaintiffs' allegations "indicate that Ancestry has used Plaintiffs' likeness for commercial purpose"); *Boshears* at 9

("Boshears has sufficiently alleged a commercial use of his personality.  As alleged in the Amended Complaint, the Classmates' website uses his image to advertise a paid subscription to its services in at least two ways. That is sufficient to show a commercial use.").

Here, as in *Lukis, Krause, Sigel, Knapke, Kolebuck-Utz, Ancestry.com*, and *Boshears*, Plaintiffs allege that Defendants misappropriate their identifies "to sell subscriptions to StateRecords' services."  Compl. ¶ 27.  The Complaint details how Defendants used their names and other identifying information "in conjunction with an offer to purchase access to their database of records."  *Id.* ¶ 29.  As numerous courts have already held, these allegations set forth a "textbook example" of misappropriating Plaintiffs' identity for a commercial purpose.  *See Lukis*, 454 F. Supp. 3d at 760.

Defendants never address this authority, instead offering inapposite caselaw that courts have resoundingly distinguished.  MTD at 28-29 (drawing support from *Dobrowolski*, 2018 WL 1118589, *3; *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012); *Thompson v. Getty Images, Inc.*, 2013 WL 3321612 (N.D. Ill. July 1, 2013)).  In *Siegel*, Judge Kocoras explained why these cases lack persuasive force:

> *Lukis* distinguished *Dobrowolski* by pointing out the defendants in *Dobrowolski* were using the free previews to advertise only background reports regarding the person identified in the preview, whereas in *Lukis*, the defendants used the plaintiffs' identifies to advertise a monthly subscription service giving the purchaser access to background reports on anyone in the defendants' databases. Thus, the plaintiff's identity "was not part and parcel of the entire product or service being advertised, meaning that Whitepages's use of her identity had a commercial purpose even on *Dobrowolski*'s understanding of Section 30(a)" of IRPA.

*Id.* (citing *Lukis*, 454 F. Supp. 3d at 760–61) (internal citations omitted).  Although expressly referencing *Dobrowolski*, this reasoning also extends to *Nieman* and *Thompson*.  *See Nieman*, 512 F. App'x at 635 (analyzing a website with a search page that advertised only the single report for the previewed identity); *Thompson*, 2013 WL 3321612, at *2 ("The Court is

unpersuaded that showing a buyer a photograph of a person that she is considering whether to buy qualifies as a 'commercial purpose' as the IRPA uses that term.").

Defendants' remaining caselaw is equally unpersuasive.  Defendants, for example, point to *Stayart v. Google, Inc.*, but that case involved entirely dissimilar facts, with a plaintiff who alleged that "various features of Google's search engine violate her right of publicity by using her name to trigger sponsored links, ads, and related searches to medications … all of which are trademarks of nationally advertised oral treatments for male erectile dysfunction."  710 F.3d at 723.  The Seventh Circuit, rejecting the plaintiff's misappropriation claim, reasoned the complaint only established, at best, that the defendant incidentally used her identity because the allegations suggested merely "that the 'levitra' and not [plaintiff's] name trigger[ed] the erectile dysfunction ads."  *Id.*  But unlike in *Stayart*, it is solely Plaintiffs' names that triggered the advertisement pages, a gap that renders *Stayart* entirely off-point.

The Complaint alleges facts that align perfectly with *Lukis*, *Seigel*, and *Krause*.  No reason or authority offered by Defendants counsel a different result.  Thus, Plaintiffs properly allege Defendants misappropriated their identity for a commercial purpose

### D.  Plaintiff Bensen and Plaintiff Harris' identities have commercial value

Defendants argue that the Court should dismiss the ORPS and IPRL claims because Plaintiff Bensen and Harris' identities do not have independent commercial value.  MTD at 24, 26.  Pleading this element is not the insurmountable hurdle that Defendants suggest.

Rather, to assert a right of publicity claim, "the plaintiff need only plead that there is some value in associating a good or service with her identity."  *Knapke*, 2021 WL 3510350, at *6 (citing *Harvey v. Systems Effect, LLC* (Ohio App. 2020) 154 N.E. 3d. 293, 295-97); *accord Kolebuck-Utz*, 2021 WL 1575219, at *2.  In *Roe v. Amazon*, for example, the defendant used the

plaintiffs' images without permission on the cover of a book the defendant authored and sold. *See* 170 F. Supp. 3d at 1030.  The plaintiffs were not celebrities, and their image did not have "widely marketable commercial value."  *Id.*  Nevertheless, the court held that the plaintiffs' image had commercial value because the defendant deliberately used it for commercial gain, thereby infringing on the plaintiffs' rights.  *Id.* at 1033; *see also Vinci v. American Can Co.* (Ohio 1984) 459 N.E.2d 507, 509-10 ("Appellants' alleged appropriation of the names and/or likenesses of the class members was based on a single advertising promotion … Regardless of the notoriety attained by the various class members … the invasion would nonetheless be actionable.").

Likewise, the common law, as Indiana courts have recognized, requires neither notoriety nor fame, only "the appropriation, for the defendant's benefits or advantages, of the plaintiff's name or likeness."  *See Felsher v. University of Evansville*, 755 N.E.2d 589, 601 n. 24 (Ind. 2001) (quoting W. Page Keeton, Prosser and Keeton on the Law of Torts 851 (5th ed. 1984)).  The same is true for Indiana's Right to Publicity Law; "[i]t is the appropriation of identity that is important."  *Id.*  (quoting David A. Elder, The Law of Privacy 393 (1991)).  Thus, as the Indiana Supreme Court has observed, no such celebrity or notoriety showing is necessary to support a right to publicity violation.

Here, as in *Kolebuck-Utz* and *Knapke*, the identities of Plaintiffs and the putative class are being used in Defendants' advertisements in order to entice viewers to purchase recurring subscription services from Defendants.  Compl. ¶ 30.  Thus, as the subject of a commercial transaction, Plaintiffs' personal identifiable information disclosed by Defendants has economic value.  *See Kolebuck-Utz*, 2021 WL 1575219, at *2 ("Plaintiff alleges that Defendant used her name to entice users to purchase Defendant's product. This is sufficient to establish commercial

value as a matter of law."); *Knapke*, 2021 WL 3510350, at *6. ("Her persona is used to make the advertisement, which shows its commercial value… The Court finds Knapke has alleged a commercial value to her persona."). This is common sense – if Defendants did not gain any value from the personas of Plaintiffs and the putative class appearing on their free previews, it would not display them to begin with.

Defendants' citation to *Harvey* does not help their commercial value argument. In *Harvey*, 154 N.E.3d at 295–97, the defendant was sued over its use of a trial court case involving plaintiff and defendant in the defendant's online realtor course alongside a stock image of a separate house. *Id.* The case did not involve advertising or marketing materials of any kind. Based on these facts, the *Harvey* court found that this use fell under a newsworthy exception in ORPS and that the information was not used for a commercial purpose. *Id.* at 307–08; *see also Kolebuck-Utz*, 2021 WL 1575219, at *2 ("Unlike Harvey, where the court found that use of the plaintiff's name was incidental and the defendant did not obtain any commercial value from it, Plaintiff alleges that Defendant used her name to entice users to purchase Defendant's product."). No comparable exemption is applicable here, and Defendants' use was anything but incidental. Thus, *Harvey* has no bearing on the instant case.

Plaintiffs Benson and Harris' identities were used to sell Defendants' subscription services. They sufficiently allege that their identities had commercial value.

## III.   THE STATUTES' PUBLIC RECORDS EXEMPTIONS DO NOT APPLY TO PLAINTIFFS' CLAIMS

Defendants finally contend that their use of Plaintiffs' names in their "reports fall into [a Public Records or Public Affairs] exemption because they contain only aggregated public information." MTD at 31. But this is an improper attempt "to expand the understanding of

public affairs from reporting on events and public persons to anything that may interest private individuals." *Sessa*, 2021 WL 4245359, at *13 (D. Nev. Sept. 15, 2022).

This same tactic has been rejected in *Lukis* and *Krause* when analyzing IRPA.  In both cases, the defendant argued that its database and constituent "background reports" involve "public affairs" and "reflect a matter of public concern."  *Lukis*, 454 F. Supp. 3d at 762 (quotations omitted).  Just as the Court should here, both *Lukis* and *Krause* addressed the free previews *as advertisements for Defendants' subscriptions rather than the underlying data in the reports themselves*.  Each free preview, along with the information displayed, is connected to an offer for a commercial transaction.  *See Lukis*, 454 F. Supp. 3d at 762 ("Defendants' invocation of Section 35(b)(2) [exception] forgets that Plaintiffs' claims are directed towards the free previews[.]"); *accord Krause*, 2021 WL 4282700, at *2.  And because the previews serve a "commercial purpose" under Section 30(a) to sell subscription services, they "necessarily . . . do not serve a 'non-commercial purpose'" under Section 35(b)(2).  *Lukis*, 454 F. Supp. 3d at 762 (citation omitted).

This same reasoning applies to ORPS as well.  *See Kolebuck-Utz*, 2021 WL 1575219, at *3 ("Plaintiff alleges that: (i) Defendant's advertisements using Plaintiff's persona were found on the same web page as Defendant's enticement for its subscription services; (ii) the enticements were described as the full report of Plaintiff's identity, available through Defendant's monthly subscription service; and (iii) Defendant's motive was singularly to entice users to purchase Defendant's services … These allegations are sufficient to establish that Defendant's advertisements using Plaintiff's persona were, in fact, commercial speech."); *Knapke*, 2021 WL 3510350, at *5 ("[The Public Affairs] exemption does not apply to the allegations in the Complaint, which assert that the use of Knapke's persona to sell Classmates' subscription service

is for a commercial purpose and not to communicate news. The Court finds no merit in Classmates argument on this point.").

The Indiana Supreme court has upheld this same reasoning when analyzing the IRPL. *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 397 (Ind. 2018) ("[W]e recognize that the unauthorized use of a personality to advertise or promote a product likely lies outside the scope of what is considered newsworthy."). *See also Boshears* at 12. (Appling same reasoning to the IRPL's "literary work" exception, and holding "Boshears attacks only the use of his likeness to sell the subscription.…  Based on these narrowed allegations and the procedural posture, the Court is unconvinced that the subscription service is a literary work. The Court rejects [Defendants'] argument as to this exception.")

Defendants' citation to *Nieman* misses that Plaintiffs' Complaint alleges that Defendants use their free previews to advertise their paid subscription services, **not** solely reports about consumers that can be purchased *a la carte*.  Thus, even if previews of reports have a direct relation to the consumers they report on, the relation between Plaintiffs and Defendants' subscriptions—which allow access to thousands, if not millions, of data entries about individuals—is negligible.  *Lukis*, 454 F. Supp. 3d at 761 ("Lukis's identity was not part and parcel of the entire product or service being advertised, meaning that Whitepages' use of her identity had a commercial purpose even on *Dobrowolski*'s understanding of Section 30(a)."); *accord Kolebuck-Utz*, 2021 WL 1575219, at *2.  This is completely distinguishable from *Nieman*, which concerned a website in which a name was used to find documents related to that person's court case, *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013).  Notably, the *Boshears* court declined to find the IRPL's "literary work" exemption applicable for this reason.

Finally, even if the free previews did advertise Defendants' reports (which, again, are not for individual sale), it would be improper to resolve whether they are excepted material under the exemptions because there is nothing pleaded describing their contents. *See Lukis*, 454 F. Supp. 3d at 763 (refusing to decide this issue because the record did not "include an example or full description of a background report.").

Defendants cannot invoke the Statutes' public records exemptions, and therefore this argument fails, too.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety.

Dated:  March 29, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta *(Pro Hac Vice)*
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: pfraietta@bursor.com

**BIRNBAUM & GODKIN, LLP**
David S. Godkin
1 Marina Park Drive, Suite 1410
Boston, MA  02210
Telephone:  (617) 307-6110
Email:  godkin@birnbaumgodkin.com

**EDELSON PC**
J. Eli Wade-Scott (*Pro Hac Vice*)
Michael W. Ovca (*Pro Hac Vice*)
350 North LaSalle Street, 14th Floor
Chicago, IL 60654

Telephone: (312) 561-6370
Facsimile: (312) 589-6378
Email: ewadescott@edelson.com
      movca@edelson.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

 Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on March 29, 2022.

       */s/ Philip L. Fraietta*   
        Philip L. Fraietta
