UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

LORETTA BENSEN, SHERRY GAUL and
SHONTONNA HARRIS, individually and on
behalf of all others similarly situated,

               Plaintiffs,

v.

INFOPAY, INC., a Delaware Corporation,
and INTERMEDIA VENTURES LLC, a
Massachusetts limited liability company,

               Defendants.

_____

Case No. 1:21-cv-12061
(Leave to file granted 4/14/22)

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants Infopay, Inc. ("InfoPay"), a Delaware corporation, and Intermedia Ventures

LLC, a Massachusetts limited liability company ("Intermedia"), submit this reply in support of

their motion to dismiss (ECF No. 24)[1] the Plaintiffs' Complaint (ECF No. 1) with prejudice.

Respectfully submitted,
INFOPAY, INC. and INTERMEDIA
VENTURES LLC

By their attorneys,

*s/ Chirag H. Patel*
Myriah V. Jaworski (admitted *pro hac vice*)
Chirag H. Patel (admitted *pro hac vice*)
420 Main St., Suite 1110,
Buffalo, New York 14202
716-898-2102 (phone)
mjaworski@beckage.com
cpatel@beckage.com

Dated: April 13, 2022

---

[1] Defendants' Memorandum of Law in Support of their Motion to Dismiss, ECF No. 24-1, is cited herein
as "Defs.' Mem.". Plaintiffs' Brief in Opposition, ECF No. 28, is cited herein as "Pls.' Opp." Pin citations
refer to page numbers in the memorandum.

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ iii

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 4

    I.    Plaintiffs' have failed to establish a "traditional" harm and "imminent" injury sufficient to demonstrate Article III standing. ............................................................................. 4

        A.    Publicity rights – district from privacy rights - do not bear a close relationship to a harm traditionally recognized as a basis for lawsuits in American courts. ....................................... 4

        B.    Plaintiffs have failed to allege an "actual or imminent" injury sufficient to satisfy Article III. ................................................................................................................... 7

    II.    Plaintiffs' Complaint fails to state a right of publicity claim under the laws of Ohio, Illinois, and Indiana. ......................................................................................................... 9

        A.    Plaintiffs' cited case law demonstrates that information in Defendants' search results is too generic to identify a specific individual. .......................................................... 9

        B.    Plaintiffs Bensen and Harris cannot meet the "commercial value" element under the Ohio and Indiana statutes. ................................................................................................ 11

        C.    Plaintiffs have failed to allege "use" through publication to a third-party, which is an essential element of a right of publicity claim. ..................................................................... 14

    III.    Alternatively, this Court should dismiss Plaintiffs' Complaint because Defendants' public records reports are subject to the public records exemption. ........................................ 15

Conclusion ........................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accord Tropeano v. Atlantic Monthly Co.*,
    400 N.E.2d 847 (Mass. 1980) ................................................. 5

*Blair v. Nevada Landing P'ship*,
    369 Ill.App.3d 318 (Ill. App. 2006) .......................................... 8

*Boshears v. PeopleConnect, Inc.*,
    2022 WL 888300 (W.D. Wash. Mar. 25, 2022).................... 3, 18

*Cheatham v. Paisano Publications, Inc.*,
    891 F.Supp. 381 (W.D. Ky.1995) ...................................... 12, 13

*Dancel v. Groupon, Inc.*,
    949 F.3d 999  (7th Cir. 2019) ............................................... 2, 9

*Daniels v. FanDuel, Inc.*,
    109 N.E.3d 390 (Ind. 2018)................................................... 17

*Dobrowolski v. Intelius, Inc.,*
    2017 WL 3720170 (N.D. Ill. Aug. 29, 2017)…………………………………………10

*Dobrowolski v. Intelius, Inc.,*
    2018 WL 11185289, *1 (N.D. Ill. May 21, 2018) ........................ 2, 9, 10

*ESPN, Inc. v. Univ. of Notre Dame Police Dep't*,
    62 N.E.3d 1192 (Ind. 2016)................................................... 14

*Felsher v. University of Evansville*,
    755 N.E.2d 589, 601 n. 24 (Ind. 2001)................................... 14

*Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*,
    202 F.2d 866 (2d Cir. 1953).......................................... 4, 5, 6

*Harvey v. Sys. Effect, LLC*,
    154 N.E.3d 293, 308 (Ohio Ct. App. 2020) ................... 5, 12, 13

*Hatcher v. State*,
    762 N.E.2d 189 (Ind. Ct. App. 2002)..................................... 14

*Jane Doe No. 1 v. Backpage.com*, LLC,
    817 F.3d 12 (1st Cir. 2016) ................................................... 12

*Knapke v. PeopleConnect Inc.*,
    2021 WL 3510350, at *5 (W.D. Wash. 2021) ........................ 3, 13, 17

*Kolebuck-Utz v. Whitepages Inc.*,
    2021 WL 1575219, at *2 (W.D. Wash. Apr. 22, 2021)........... 3, 13

*Krause v. RocketReach*, LLC,
    2021 WL 4282700 (N.D. Ill. Sept. 21, 2021)...................... 16, 17

*Landham v. Lewis Galoob Toys, Inc.*,
    227 F.3d 619 (6th Cir. 2000)............................................. 7, 12

*Lukis v. Whitepages Inc.*,
　454 F. Supp. 3d 746 (N.D. Ill. 2020)(Feinerman, J.) ...................................................... 3, 7, 17

*Roe v. Amazon.com*,
　170 F. Supp. 3d 1028 (S.D. Ohio 2016) ................................................................. 13

*Rogers v. Grimaldi*,
　875 F.2d 994 (2d Cir. 1989) ...................................................................................... 5

*Ruggers, Inc. v. U.S.*,
　736 F.Supp.2d 336, 342 (D. Mass. 2010) ............................................................... 7

*Siegel v. Zoominfo Techs., LLC*,
　2021 WL 4306148, at *4 (N.D. Ill. Sept. 22, 2021) ............................................... 16

*Sessa v. Ancestry.com Operations Inc.*,
　2021 WL 4245359, at *1 (D. Nev. Sept. 16, 2021) ............................................... 3, 7

*Trannel v. Prairie Ridge Media, Inc.*,
　987 N.E.2d 923 (Ill. App. 2013) ......................................................................... 5, 15

*Verde v. Confi-Chek, Inc.*,
　No. 21-cv-50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) ............................. 8

*Vinci v. American Can Co.*
　459 N.E.2d 507 (Ohio 1984) ................................................................................... 13

*Zoll v. Jordache Enterprises, Inc.*,
　2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) ........................................................ 9

## Other Authorities

765 ILCS 1075/35(b)(1)-(2) ....................................................................................... 17

765 ILCS 1075/35(b)(4) .............................................................................................. 17

Ind. Code § 32-36-1-1(c)(1), (3) ................................................................................ 17

Ind. Code § 32-36-1-1(c)(4) H.E.A. 1258, 117th Gen. Assemb., 2d Reg. Sess. (Ind. 2012) ....... 14

Ind. Code § 32-36-1-6 ................................................................................................ 13

Ind. Code Ann. § 32-36-1-1(c)(1)(D) ......................................................................... 18

Mark Roesler, *et al. What's in a Name, Likeness, and Image? The Case for a Federal Right of Publicity Law*. LANDSLIDE, American Bar Association, Vo. 13, No. 1, Sept/Oct. 2020 at n. 6 . 6

Ohio Rev. Code § 2741.09(A)(1)(a), (b) ..................................................................... 17

Ohio Rev. Code § 2741.09(A)(1)(d) ............................................................................ 17

# INTRODUCTION

Plaintiffs' pile implausible inference upon implausible inference in an effort to save their claims from dismissal. Plaintiffs begin by asking this Court to infer that generic information (first name, last initial, age, and city and state) actually identifies them without any allegations to support that inference. Then, while admitting that the search result pages of which they complain appear *only if* a Website user specifically searches for them, Plaintiffs fail to allege any basis to believe that any such searches ever occurred. Instead, they ask this Court – again without any supporting plausible allegation – to infer that someone, somewhere (other than themselves) in fact searched for the Plaintiffs on the Website. On top of this teetering house of cards, Plaintiffs add two more implausible inferences: (i) that the generic, hypothetically searched for information has commercial value; and (ii) that the Plaintiffs were somehow injured by the hypothetical use of this generic information.

**Section I** explains that Plaintiffs have failed to show that they have Article III standing. First, Plaintiffs cannot demonstrate that the alleged procedural violation of the right of publicity statutes bears a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts," *TransUnion v. Ramirez*, 141 S.Ct. 2190, 2204 (2021), because publicity rights are entirely distinct from privacy rights. Second, Plaintiffs cannot show an "actual or imminent" injury-in-fact because the publication of their information requires a third-party to conduct a search with criteria sufficient to yield that information in the search results (which they do not actually allege occurred). Plaintiffs' reliance on case law discussing "publicly available information" on websites is inapposite.

**Section II** explains that Plaintiffs' claims also fail on the merits, and most of the cases cited by Plaintiffs support dismissal of Plaintiffs' claims with prejudice:

*Identity*.  Plaintiffs have failed to establish that the information in the search results constitutes the use of any of *their* "identities" as a matter of law.  The Website's search results display only four elements: a first name; a last initial; a general location (*i.e.*, city and state); and sometimes an age.  For Plaintiff Bensen, the results page listing "Loretta B" in Ohio is not sufficient to identify her specifically or distinguish her from any other "Loretta B" in Ohio, such as Loretta Benton, Baker, Brown, or Bell.[2]  Indeed, the search results that Plaintiff Bensen cites indicate three different "Loretta Bs," and it is unclear if any of the results actually correspond to her.  Plaintiffs' also fail to allege or attach search results for Plaintiffs' Harris and Gaul.

A plausible right of publicity claim "demands that an attribute, even a name, serve[s] to identify . . . not just *an* individual but '*that* individual,' the one whose identity is being appropriated."  *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1009 (7th Cir. 2019) (emphasis in original).  Every case in which a court found that a plaintiff plausibly stated a claim based on website search results included far more detailed information than what is presented on Defendants' search results:

| Case(s) | Website | Information on Results Page | Result |
|---|---|---|---|
| *Dobrowolski*[3] | Intellius | First name, last name, age, employment history, and location. | Dismissed |
| *Lukis*[4]; *Kolebutz-Utz*[5] | WhitePages.com | First name, last name, middle initial, age range, current and former addresses, phone numbers, and possible relatives. | Plausible |
| *Knapke*[6]; *Boshears*[7] | Classmates.com | First name, last name, photograph of the plaintiff as a minor | Plausible |

[2] Indeed, a search for "Loretta B" in "Ohio" on the Website yields numerous results.
[3] *Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, *1 (N.D. Ill. May 21, 2018)(Shah, J.).
[4] *Lukis v. Whitepages Inc*., 454 F. Supp. 3d 746, 761 (N.D. Ill. 2020)(Feinerman, J.).
[5] *Kolebuck-Utz v. Whitepages Inc*., 2021 WL 1575219, at *2 (W.D. Wash. Apr. 22, 2021))(Coughenour, J.)
[6] *Knapke v. PeopleConnect Inc*., 2021 WL 3510350, at *5 (W.D. Wash. 2021)(Pechman, J.)
[7] *Boshears v. PeopleConnect, Inc*., 2022 WL 888300 (W.D. Wash. Mar. 25, 2022)(Pechman, J.)

| *Sessa*[8] | Ancestry.com | First name, last name, photographs of the plaintiffs as a minor, graduation dates, locations. | Plausible |
|---|---|---|---|
| *Compare: Bensen* | **StateRecords.org** | **First name, last initial, city/state, sometimes age.** | |

[Table 1]

Put simply: the limited information on Defendants' Website is not sufficient to identify a *specific* individual and distinguish that individual from all others with similar attributes.

*Commercial Value***:**  Bensen and Harris concede that they failed to plead that their information has commercial value.  The case law makes clear that the commercial value must be "significant," meaning it must have independent, marketable value.  Plaintiffs' circular argument that the mere appearance of their information in search results establishes that it has commercial value fails because it is contrary to case law, renders the statutory term "commercial value" superfluous, and conflates the requirement with the "commercial use" element.

*Use***:**  "Use" or "publication" is an essential element to any right of publicity claim.  Plaintiffs fail to plausible allege that a third-party conducted a search that actually caused the publication of their information on a search results page. Cases involving information that was affirmatively and directly published on a website is inapposite.

*Public Affairs Exemption***:**  The statutory public affairs exemption applies to matters of newsworthiness or public affairs (Defendants' public records reports).  Plaintiffs' own allegations about the contents of the reports demonstrates the exemption is applicable.

For all the reasons stated herein, and as set forth in Defendants' memorandum of law, this Court should dismiss Plaintiffs' Complaint with prejudice.

---

[8] *Sessa v. Ancestry.com Operations Inc.*, 2021 WL 4245359, at *1 (D. Nev. Sept. 16, 2021)(Navarro, J.)

**ARGUMENT**

I.  **Plaintiffs' have failed to establish a "traditional" harm and "imminent" injury sufficient to demonstrate Article III standing.**

Because Plaintiffs' claim is based on a bare statutory violation they must show that: (1) the statutory violation bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts," *TransUnion*, 141 S.Ct. at 2204, and (2) the alleged injury is "actual or imminent" and not speculative. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs fail to meet both requirements.

   A.  **Publicity rights – district from privacy rights - do not bear a close relationship to a harm traditionally recognized as a basis for lawsuits in American courts.**

The modern "right of publicity" has no tradition in American courts. The subject right of publicity acts were enacted in 1994 (Indiana) and 1999 (Illinois and Ohio), and the first decision from an Article III court to formally recognize the right came in 1953. *See Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir. 1953). (Defs.' Mem. at 10). Plaintiffs' argument that the right of publicity has a "traditional basis" in American courts is based on two false premises: (1) the right of *publicity* is same as the right of *privacy* (it is not), and (2) the Court's analysis should focus on the alleged recognition of the right by the Illinois, Ohio, and Indiana legislatures, rather than "American courts" as a whole (and particularly Article III federal courts).

         1.  The "right of privacy" is fundamentally distinct from the "right of publicity."

Plaintiffs incorrectly argue that the "right of publicity" is the same as an "invasion of privacy" (*i.e.*, an intrusion upon seclusion). *See* Pls.' Opp. at 6-7 (string cite to invasion of privacy cases). Indeed, *Haelan*, 202 F.2d at 868, made it clear that the right is "independent of

4

that right of privacy." *See also Tropeano v. Atlantic Monthly Co.*, 400 N.E.2d 847, 850 (Mass. 1980) (noting the "sharp distinction" between privacy and publicity rights). Rather, the modern development of publicity rights resulted from "courts [denying] celebrities recovery [for invasion of privacy claims], since a celebrity, by virtue of his or her fame, *lacked privacy*." *Trannel v. Prairie Ridge Media, Inc*., 987 N.E.2d 923, 928 (Ill. App. 2013)(citation omitted; emphasis added). The courts *then established* the right of publicity to protect the commercial value of a celebrity's identity, *rather than a privacy interest*." *Id*. (emphasis added). *See also Rogers v. Grimaldi*, 875 F.2d 994, 1003–04 (2d Cir. 1989) (purpose is to "grant[] celebrities an exclusive right to control the commercial value of their names and to prevent [exploitation]"). In *Harvey* v. *Sys. Effect, LLC*, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020), the Ohio Appellate Court observed that the distinction between these rights caused Restatement drafters to place the torts in entirely different sections:

> Furthermore, the transfer of the right to publicity from invasion of privacy *to the section of the Restatement dealing with unfair competition* implies that the tort's primary focus is the value of a person's name, vis-à-vis his or her ability to market it for commercial purposes.

(emphasis added).

Publicity rights developed recently and to protect distinct interests from privacy rights. Thus, cases discussing *privacy* rights are irrelevant to determining whether the right of *publicity* has been traditionally recognized by American courts under *TransUnion* and *Spokeo. See* Pls.' Opp. at 6-7 (citing privacy cases, including those pre-dating *TransUnion*).

    2.   <u>The right of publicity has not been traditionally recognized as a cause of action by American courts</u>.

Recognizing that cases discussing privacy rights cannot establish Article III standing for their publicity claims, Plaintiffs argue that publicity rights are "traditionally recognized" because

the Ohio, Illinois, and Indiana legislatures recognized the right. But that is not the test. Rather, the proper inquiry is whether the right have been "traditionally recognized . . . in *American courts*," *TransUnion*, 141 S.Ct. at 2200. As explained below, this means traditional recognition by *federal* courts because an inquiry based on *state* recognition of common law rights would lead to inconsistent determinations of the existence of Article III standing in federal courts.

Article III courts constitute a nationwide federal system. Consistent application of the standards for Article III standing dictate that federal courts focus on broader recognition of American courts, rather than the state enacting the law. A narrow state-specific analysis would lead to district courts reaching varying conclusions regarding the existence of Article III standing based on the peculiar history of the common law of the state in which the district court sits. *See Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 622-23 (6th Cir. 2000) (courts "typically give attention to the entire available body of case law when deciding right of publicity cases" to promote the "general constitutional policy of maintaining uniformity" of the law).

The inconsistency would be compounded in situations where an Article III court sitting in diversity is considering the law of another state (as it is here). As of 2020, nearly one-third of states (including Massachusetts) do not recognize a common law right of publicity. (Defs. Mem. at 19 nt. 5 (citing Mark Roesler, *et al*. *What's in a Name, Likeness, and Image? The Case for a Federal Right of Publicity Law*. LANDSLIDE, American Bar Association, Vol. 13, No. 1, Sept/Oct. 2020 at n. 6)). See *Ruggers, Inc. v. U.S.*, 736 F.Supp.2d 336, 342 (D. Mass. 2010). The Plaintiffs' proposed test would have this Court recognize that their alleged harm confers standing for claims arising under other states' laws, but not under Massachusetts law. But Article III requires a uniform "case or controversy" threshold for prudential standing into *all* federal courts, not just federal courts applying one state's law or another's. This Court should

avoid inconsistency by applying the same standard: whether the harm at issue has been traditionally recognized as providing a basis for a lawsuit in federal courts. *TransUnion*, 141 S.Ct. at 2204.

The two cases cited by Plaintiffs are not persuasive. In *Lukis v. Whitepages Inc*., 549 F. Supp. 3d 798, 804-06 (N.D. Ill. 2021), the district court improperly focused on the right of *privacy* and *state* law. In *Sessa v. Ancestry.com Operations Inc.*, 2021 WL 4245359, *5 (D. Nev. Sept. 16, 2021), the district court reduced the test simply to whether there was a "common law analog" without addressing whether it was "traditionally" recognized in light of the right's modern development. Accordingly, because they have failed to allege the violation of a traditionally recognized right, the Plaintiffs lack Article III standing to bring suit in this Court.

**B. Plaintiffs have failed to allege an "actual or imminent" injury sufficient to satisfy Article III.**

Plaintiffs also failed to demonstrate "actual or imminent" injury based on the alleged *potential* appearance of certain partial information in the Website's search results. An injury requires actual publication but Plaintiffs neither allege that anyone actually searched for them on the Website, nor do they plausibly allege a reasonable likelihood that anyone *would* search for them. Rather, Plaintiffs' theory of injury depends entirely upon the unpled speculative conduct of unknown third parties. (Defs.' Mem. at 12-15).

The Northern District of Illinois addressed this specific question in *Verde v. Confi-Chek, Inc.*, No. 21-cv-50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021). In *Verde,* an individual alleged a violation of the Illinois Right of Publicity because her name might appear in search results on the defendant's website that sold informational reports, but she failed to allege that anyone actually searched for her. *Id*. at *2. Applying *TransUnion,* the *Verde* court explained that the plaintiff lacked Article III standing:

Plaintiff has not alleged any third party ever searched her name or viewed her "free preview" on defendant's website. She alleges she discovered that her name being entered on defendant's website generated a preview that showed her name, age, city of domicile, and relative's names . . . , **but she does not allege defendant ever provided any information about her to any third party**. Thus, she is in a like position to the *TransUnion* class members who learned their credit reports indicated their names were considered a potential match to names on the OFAC list but whose credit reports had not been disseminated to potential creditors. [ . . . . ] *Without dissemination to a third party, the inaccurate and misleading information did not harm them*."

*Id*. at *4 (emphasis added). *See also Blair v. Nevada Landing P'ship*, 369 Ill.App.3d 318, 325 (Ill. App. 2006) (citing *Zoll v. Jordache Enterprises, Inc*., 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) (finding that a violation occurs, and the statute of limitations is triggered, upon publication of the article containing the misappropriation).

Plaintiffs have failed to allege an actual or imminent injury for the same reasons. Plaintiffs' allegations about the Website's operation contradict their assertion that information on search results pages is "publicly accessible to prospective customers." (Pls.' Opp. at 11). Again, a search page containing the information asserted by Plaintiffs to constitute their "identity" cannot, and does not, exist unless a third party enters specific search criteria. To be clear, Defendants do not argue that "Plaintiffs must allege with specificity who exactly viewed their information." (Pls.' Opp. at 10). Rather, Article III demands, at a minimum, that Plaintiffs plausibly allege that someone, somewhere (other than themselves) actually entered specific search criteria on the Website and viewed the resulting information. Plaintiffs failed to meet this burden.

II.    **Plaintiffs' Complaint fails to state a right of publicity claim under the laws of Ohio, Illinois, and Indiana.**

      A.  **Plaintiffs' cited case law demonstrates that information in Defendants' search results is too generic to identify a specific individual.**

Defendants' Website's search results do not constitute the use of an "identity" "persona" or "personality" because the information is too generic to associate it with a specific individual. (Def.'s Mem. at 17-21).  On that point, *Dobrowolski*, 2018 WL 11185289, is directly on point. (*Id*. at 18-19).  Again, pleading a use of an identity in a publication "demands that an attribute, even a name, serve to identify . . . not just *an* individual but '*that* individual,' the one whose identity is being appropriated." *Dancel*, 949 F.3d at 1009(emphasis in original).  Plaintiffs cannot establish "use" of their "identities" as a matter of law because the partial information in the search results in not specific enough to identify these particular Plaintiffs (opposed to anyone else with the same first name and last initial).

In response, Plaintiffs cite a series of cases involving fundamentally different websites that published much more detailed and specific information than Defendants' Website.  Not only did those websites display full first **and** last names (not just a last initial), but they coupled these full names with detailed information (street addresses, relatives, phone numbers and photographs) that would connect a generic name to specific individual. (Pls' Opp. at 18-19). *Table 1, supra,* at 3, clearly illustrates the distinction. Plaintiffs attempt to gloss over the factual and operational distinctions of the Website from these other websites.  In truth, the limited information presented on Defendants' Website is insufficient to identify the specific Plaintiffs. Thus, Plaintiffs have failed to plausibly establish the use of their "identities" as a matter of law.

Plaintiffs argue that *Dobrowolski* is distinguishable because the Court was evaluating a Google advertisement that included only a first and last name. (Pls.' Opp. at 18-19). Not true. In

*Dobrowolski I*, 2017 WL 3720170, at *6, the Court focused its review on the Google ads. However, upon amending their complaint, the plaintiff shifted his attack to "defendant's website, which plaintiff refers to as the marketing page" that "included additional identifying information, such as the individual's age, employment history, and location." *Dobrowolski II*, 2018 WL 11185289, at *1, *3 ("use of plaintiffs' names on the marketing page does not violate IRPA either").

Desperate to survive dismissal, Plaintiffs' press this Court to consider unpled extrinsic allegations extrinsic that they claim establish the use of Plaintiffs' identity. (Pls.' Opp. at 15-18). Specifically, Plaintiffs argue that when the search results are combined with search input of "first name, last name, and city and state of residence" the search *terms* and search *results* are collectively sufficient to identify a specific individual. *Id.* This argument fails for several reasons. First, Plaintiffs do not allege that anyone conducted a search for any Plaintiff with all of the criteria argued, or that the Website *requires* all of the search fields to be filled to conduct a search.[9] Second, even if Plaintiffs used specific search terms to generate *Figure 1*, *Figure* 1 still lists three separate "Loretta B's" and Plaintiffs do not explain which result purportedly identifies Plaintiff Bensen, or why any of the other results should be ignored. Plaintiffs do not provide any results for Harris or Gaul despite Plaintiffs' claim that the results are "substantially identical." (Pls.' Opp. at 15 nt, 4.).

Third, as explained in *Dobrowolski I* and *II*, information contained on a separate page does not transform the results into the use of an identity. This principle applies with even more force where the information on the separate page is based on unknown search criteria input by a

---

[9] To the contrary, the website allows searches with only partial names or partial fields. While this is extrinsic, Plaintiffs' argument relies on an unpled assumption that the Website requires exact search criteria to conduct a search.

third party.  This Court should dismiss Plaintiffs' Complaint with prejudice because the search results pages do not contain information sufficient to specifically identity the Plaintiffs.

**B.  Plaintiffs Bensen and Harris cannot meet the "commercial value" element under the Ohio and Indiana statutes.**

Plaintiffs concede that their Complaint fails to allege that either Bensen or Harris has "personality" or "persona" with "commercial value," but argue that this hurdle is not "insurmountable."  (Pls.' Opp. at 24-26).  Attempting to clear this hurdle, Plaintiffs offer a syllogistic argument:  Defendants would not have used Plaintiffs names if they were not valuable, therefore Plaintiffs names must be valuable.[10]  Aside from not being plausibly alleged, Plaintiffs' argument is logically flawed and contradicted by law.  As explained below, "commercial value" means significant, independent value.  This Court should reject Plaintiffs' argument because it renders the statutory term superfluous and merges it with the independent "commercial *purpose*" element.

*Ohio.*  The Ohio Appellate Court's decision in *Harvey,* 154 N.E.3d 293 is binding because it defines the contours of the "commercial value" prong under the Ohio right of publicity law. After a detailed discussion of Ohio's common law right of publicity and eventual codification of the right in 1999, *Harvey* held that

> "in order to assert the right of publicity, a plaintiff must demonstrate that there is value in associating an item of commerce with his identity." **Specifically, a plaintiff must show "*significant* 'commercial value."**

---

[10] As explained, Defendants' aggregated public reports have value and a search function is an incidental requirement to inform customers of the reports available for purchase. (Defs.' Mem. at 23-24). *See also Jane Doe No. 1 v. Backpage.com*, LLC, 817 F.3d 12, 27 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017) ("the fact that the publisher was a for-profit business did not by itself transform the incidental publication of the plaintiff's picture into an appropriation for advertising or trade purposes").

*Id.* at 303-309 (quoting *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir.2000)

(quoting *Cheatham v. Paisano Publications, Inc.*, 891 F.Supp. 381, 386 (W.D. Ky.1995))

(emphasis added; cleaned up)).  Relying on *Cheatham*, *Harvey* concluded that:

> the best rule is that the remedy available in right of publicity claims belongs to those whose identity has commercial value. Commercial value may be established by proof of (1) the <u>distinctiveness</u> of the identity and by (2) the degree of <u>recognition</u> of the person among those receiving the publicity. * * * ***In order to succeed in her claim, Plaintiff must have a notoriety which is strong enough to have commercial value within an identifiable group.***

*Id.* (quoting *Cheatham*, 891 F.Supp. at 386-87)(emphasis added).  Thus, plaintiffs claiming

misappropriation of their commercially valuable identity must "[i]nclud[e] economic indicators

like collective ownership and licensing . . . to show that their name, identity, or likeness has

commercial value." *Id.* at 309.  "Applying the principles in the above cases," the *Harvey* court

concluded that "commercial value" prong did not require "celebrity" status but did require a

plaintiff to prove that "her name had ***significant*** value." *Id.* at 306 (emphasis added).

*Harvey*'s exact point was that mere commercial use of a name does not establish

commercial value.  Instead, a plaintiff must show independent, significant commercial value.

Thus, Plaintiffs' cited cases carry no weight. *Vinci v. American Can Co.* 459 N.E.2d 507 (Ohio

1984), pre-dates Ohio's 1999 codification of its right of publicity. *Harvey*'s 2020 Ohio

Appellate Court decision supersedes the district court's decision in *Roe v. Amazon.com*, 170 F.

Supp. 3d 1028 (S.D. Ohio 2016). *Knapke*, 2021 WL 3510350, at *6, and *Kolebuck-Utz v.

Whitepages Inc.*, 2021 WL 1575219, at *2 (W.D. Wash. Apr. 22, 2021), misapplied *Harvey*,

because those courts accepted Plaintiffs' flawed argument that the mere use of a name proves it

has commercial value. This Court must dismiss Bensen's claim (Count I) with prejudice because

she has not alleged and cannot show her name has significant commercial value.

**Indiana.** *Harvey*'s thoughtful discussion also informs the meaning of "commercial value" in the Indiana statute. Plaintiffs' argument that use in a commercial setting alone also establishes commercial value is flawed because it renders the statutory term "commercial value" entirely superfluous. The statute separately requires a plaintiff to prove that the defendant used the plaintiff's "personality" for a "commercial *purpose*." Ind. Code § 32-36-1-6 ("has commercial *value*," and is used "for a commercial *purpose*" (emphasis added)). Under Plaintiffs' argument, a person who establishes the commercial purpose requirement would automatically meet the distinct "commercial value" requirement. This is contrary to Indiana Supreme Court's principle to "'avoid[s] a[ statutory] interpretation that renders any part of the statute meaningless or superfluous.'" *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1199 (Ind. 2016) (quoting *Hatcher v. State*, 762 N.E.2d 189, 192 (Ind. Ct. App. 2002)).[11]

The only case Plaintiffs cite regarding Indiana's "commercial value" requirement is *Felsher v. University of Evansville*, 755 N.E.2d 589, 601 n. 24 (Ind. 2001). However, *Felsher* did not even involve a claim under Indiana's right of publicity statute, and that court did not engage in any discussion of "commercial value." *See id.* This Court should dismiss Harris' claim (Count III) with prejudice because she has not alleged and cannot establish that she has a "personality" with "commercial value."

---

[11] The Indiana General Assembly's amendment to remove protection for individuals whose personality had "commercial value solely because that personality has been formally charged with or convicted of a crime" bolsters the argument for independent commercial value. Ind. Code § 32-36-1-1(c)(4) H.E.A. 1258, 117th Gen. Assemb., 2d Reg. Sess. (Ind. 2012). In doing so, the General Assembly acknowledged that the existence of "commercial value" to a personality was vital to a claim but removed protection for those whose commercial value stemmed from criminal infamy.

### C. Plaintiffs have failed to allege "use" through publication to a third-party, which is an essential element of a right of publicity claim.

Plaintiffs' complaint also fails to satisfy the "use" requirement in each of the three statutes. Plaintiffs argue that the "use" or publication element is met by because their information is "displayed" on the Website's search results page, which is "accessible by anyone with an Internet connection[,]" (Pls.' Opp. at 20) but their acknowledge that is not how the Website works. As Plaintiffs' Opposition illustrates, at 15-17, Plaintiffs' information does not exist on a static page of Defendants' Website. To the contrary, a search results page containing Plaintiffs' (partial) information would come into existence *only if* a Website user inputs sufficiently specific criteria in the search engine. In other words, any use or publication of their information is contingent upon a third party conducting a search on the Website. Thus, Plaintiffs' arguments about "readily accessible public websites" completely miss the mark.

Plaintiffs' reliance on *Trannel v. Prairie Ridge Media, Inc*., 987 N.E.2d 923 (Ill. App. Ct. 2013), is misplaced because this case illustrates Defendants' point. In *Trannel*, the defendant *printed* a physical media kit and *delivered* it – the traditional method for publication – to a few dozen individuals and businesses. *Id*. at 929. In that circumstance, the plaintiff plausibly alleged that the defendant used the plaintiff's identity in published materials.

Here, Plaintiffs have not plausibly alleged a publication. Rather, Plaintiffs allege only that Plaintiffs' information *might* have been displayed on Defendants' Website *if* a third party searched for them, and Plaintiffs have not alleged that anyone – other than themselves – has actually done so. For further illustration, this would be akin to the *Trannel* defendants creating the media kit in a computer file, but never printing it and distributing it to the public. The "use" requirement is not met in either circumstance.

Here again, Plaintiffs' string citation is misleading because the cited cases each involved

fundamentally different types of websites with far more specific allegations (Pls. Opp. at 21-23):

| Case | Website | Distinguishing Factors |
|---|---|---|
| *Knapke* | Classmates | Plaintiff expressly alleged that "Classmates [was] using her image to market its products and services on the internet, which *is available to the public at large*." 553. F.Supp.3d at 876 (emphasis added). |
| *Boshears* | Classmates | Discussing the "commercial purpose" element, not the "use" or "publication" argument discussed herein. 2022 WL 888300, at *5. |
| *Sessa* | Ancestry | Plaintiffs expressly alleged that Ancestry's users had viewed pop-up ads containing the plaintiffs' information. 2021 WL 4245359, at *6 |
| *Lukis* | Whitepages | Discussing the "commercial purpose" element, not the "use" or "publication" argument discussed herein. 2022 WL 888300, at *5. |

[Table 2]

This leaves only *Krause*, and *Siegel*. *Krause*, 2021 WL 4282700, at *1, is unpersuasive because

the defendant raised the argument in a footnote without developing it. In *Siegel v. Zoominfo*

*Techs., LLC,* 2021 WL 4306148, at *4 (N.D. Ill. Sept. 22, 2021), the district court only

considered whether the complaint alleged "public use or holding out of an individual's identity"

as required by the definition of "commercial purpose" in the Illinois statutes. Despite apparently

acknowledging that the plaintiff would need to prove publication to a third party, the court

decided: "for now, . . . Plaintiff has sufficiently stated a claim for relief[.]" For all of the reasons

set forth above, this Court should decline to follow *Krause* and *Siegel* and find that Plaintiffs'

Complaint fails to allege the essential element of "use" of Plaintiffs' information.

### III.     Alternatively, this Court should dismiss Plaintiffs' Complaint because Defendants' public records reports are subject to the public records exemption.

Finally, each state's exemption applies to matters of newsworthiness/public affairs

(Defendants' public records reports) and advertisements for that exempt use (the search results

pages).[12]  Plaintiffs' allegations establish the exemption applies because they admit that the

reports are comprised solely of aggregated "*government-generated records*," including

arrest/warrant records, criminal records, court records, marriage records, bankruptcies and liens,

lawsuits, and police reports."  Compl. ¶ 23 (emphasis added).  The exemption is applicable under

Illinois, Indiana, and Ohio law:

    ***Illinois.***  In *Lukis*, 454 F. Supp. 3d at 762, the Northern District of Illinois acknowledged

that the public affairs exemption could apply to a subscription-based website because the reports

themselves were exempt under the public affairs exemption, 765 ILCS 1075/35(b)(1)-(2), and

the search results pages were "promotional materials [or] advertisements" for the exempt reports.

765 ILCS 1075/35(b)(4).  However, the Court declined the apply the exemption because it

lacked information about the content of the subject report.  *See id*.  Here, however, Plaintiffs'

own allegations establish that the reports are aggregated public records. *Krause v. RocketReach*,

*LLC*, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021), is inapplicable because it did not consider

whether the search results pages were exempt "promotional materials [or] advertisements" under

765 ILCS 1075/35(b)(4).

    ***Indiana.***  Indiana's public affairs exemption follows the same structure as the Illinois

statute.  The statute separately exempts matters of public affairs and "advertisements" for those

matters.  Ind. Code § 32-36-1-1(c)(1), (3).  Plaintiffs cite *Daniels v. FanDuel, Inc*., 109 N.E.3d

390, 397 (Ind. 2018), for a proposition that was the opposite of its ultimate holding. *Daniels* held

that the public affairs exemption should be given "broad construction," and applied the

exemption to a for-profit fantasy sports betting website's use of college athletes' personalities.

---

[12] Defendants do not concede the search results pages are "advertisements." Plaintiffs, however, argue that the search results pages are "marketing pages." See Pls.' Compl. ¶ 3. Thus, Plaintiffs' claims fail even if this Court accepts Plaintiffs' claim as true.

*See id.* Accordingly, *Daniels* supports Defendants because it advocates for the "broad" application of the exemption.

**Ohio.** Like Illinois and Indiana, the Ohio Act has an exemption for literary works and matters of "newsworthy value," Ohio Rev. Code § 2741.09(A)(1)(a), (b), and "advertisement or commercial announcement[s]," related to those uses, § 2741.09(A)(1)(d). *Knapke*, 553 F. Supp. 3d at 878, supports Defendants because it held this exemption applied to Classmate.com's online yearbooks. *Boshears*, 2022 WL 888300, *6, is inapplicable because it applied Indiana law and did not consider the exception for promotional materials in Ind. Code Ann. § 32-36-1-1(c)(1)(D).

## CONCLUSION

Wherefore for the reasons set forth above, this Court should enter an order:

(a)     Dismissing Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing;

(b)     Dismissing Plaintiffs' Complaint with Prejudice under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim under: (i) Ohio Right of Publicity Law, Ohio Rev. Code § 2741.02, et seq. (Count I); (ii) Illinois Right of Publicity Act, 765 ILCS 1075/1, et seq. (Count II); or (iii) the Indiana Right of Publicity Law, Ind. Code § 32-36-1 (Count III); and

(c)     for any other relief in Defendants' favor that this Court deems appropriate.

Respectfully submitted,
INFOPAY, INC. and
INTERMEDIA VENTURES LLC

By their attorneys,

*s/ Chirag H. Patel*
Myriah V. Jaworski (admitted *pro hac vice*)
Chirag H. Patel (admitted *pro hac vice*)
Beckage PLLC
420 Main St., Suite 1110,
Buffalo, New York 14202

716-898-2102 (phone)
mjaworski@beckage.com

Dated: April 13, 2022    cpatel@beckage.com


*s/ Payal Salsburg*
Payal Salsburg, BBO No. 568812
Laredo & Smith, LLP
101 Federal Street, Suite 650
Boston, MA 02110
617-443-1100 (phone)
617-443-1174 (fax)

Dated: April 13, 2022    salsburg@laredosmith.com

## CERTIFICATE OF SERVICE

I, Chirag Patel, hereby certify that on April 13, 2022, I caused this document to be served by CM/ECF upon all counsel of record and parties who have appeared in the case.

*s/ Chirag H. Patel*
Chirag H. Patel